[Cite as *State v. Miku*, 2018-Ohio-1584.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2017 CA 00057 |
| MATHEW NICOLAS MIKU | |
| Defendant-Appellant | O P I N I O N |



CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2016 CR 00458


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      April 20, 2018


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           AARON KOVALCHIK
PROSECUTING ATTORNEY                      116 Cleveland Avenue, NW
RONALD MARK CALDWELL                      808 Courtyard Centre
ASSISTANT PROSECUTOR                      Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702

*Wise, John, P. J.*

{¶1}   Defendant-Appellant Mathew Nicolas Miku appeals his conviction for murder and child endangering in the Court of Common Pleas, Stark County. Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}   On the late morning of March 4, 2016, paramedics from the Canton Fire Department were dispatched to a residence on Dewalt Ave. NW in response to a report of an adult woman needing medical assistance. Appellant lived there with Hailey Miku, his young daughter, and his girlfriend Jessica Bender (who is not the child's mother). The paramedics instead discovered the body of three-year-old Hailey on a mattress in the living room. Paramedic John Huff later testified that appellant appeared "frantic" at the scene. Appellant then stated that Hailey had tripped over a cat and had fallen down a flight of carpeted stairs the previous week. Trial Tr. at 254, 256. Appellant told Huff that he had brought Hailey downstairs after discovering her in an unresponsive state. *Id.* Sergeant Robert Smith and Officer Dave Wolgamott of the Canton Police Department were also dispatched to the scene. According to Sgt. Smith, when he made contact with appellant, his response was: "I'm going to jail, ain't I?" Tr. at 267.

{¶3}   Harry Campbell, the chief investigator for the Stark County Coroner, also came to the scene. He observed that rigor mortis had set in, and he observed *inter alia* "numerous injuries *** across [Hailey's] scalp, the forehead, the bridge of the nose, and the right cheek." Tr. at 293. Campbell also noted additional injuries, including abrasions and bruises, about the girl's head and body.

{¶4}   Appellant was interviewed by Detective Joseph Mongold at Canton Police headquarters, after signing a written waiver of his *Miranda* rights. Tr. at 455. Appellant told

him that the girl's mother, Justina Longwell, had asked him around Thanksgiving of 2015 to watch Hailey for a few days, but that she thereafter avoided resuming physical custody. Tr. at 460-461. Appellant initially maintained his claim that Hailey had fallen down the stairs. As Mongold continued the questioning, he pointed out that the girl's numerous injuries were not consistent with a single fall down the carpeted stairs. Appellant at some point in the process added that she had also fallen off the toilet. Appellant further suggested that the girl may have had a reaction to Tylenol or Ibuprofen. Tr. at 464. At some point, appellant began to concede that he had "severe anger issues," that he usually took his frustration out on Hailey, and that he had a hard time controlling himself when he acted violently. Tr. at 465. He then admitted that he had hit her in the face with an open hand, causing her ear to bleed, and that he had beat her with a curtain rod. Tr. at 467. Ultimately, appellant confessed to the detective that he had gone too far and killed her. Tr. at 468. When asked about Jessica Bender's role in the abuse of Hailey, appellant stated Bender "didn't have a hard bone in her body and wouldn't hurt a fly." *Id.* Appellant also asked Det. Mongold to tell some of the neighbors that he knew what he had done was wrong. Tr. at 470.

{¶5}     On July 26, 2016, the Stark County Grand Jury indicted appellant on one count of murder (R.C. 2903.02(B)), specifically for knowingly causing the death of another as a proximate result of committing the second-degree felony of child endangering. Appellant was also indicted on one count of child endangering (R.C. 2919.22(B)(1) and (E)(2)(d)), specifically for recklessly abusing a child that resulted in serious physical harm to the child, or (under R.C. 2919.22(B)(2) and (E)(3)), for recklessly torturing or cruelly abusing the child that resulted in serious physical harm to the child. The State's theory of

the case was that appellant beat the child over a three-month period without seeking medical attention for her, resulting in her death.

{¶6} Appellant subsequently pled not guilty to the above charges. On November 21, 2016, appellant filed a motion to suppress the statements he made to Detective Mongold during the recorded interview at the Canton Police Department. He argued in his motion that his waiver of his constitutional rights and agreement to speak was induced by improper promises made by the detective. Following a hearing on December 1, 2016, the trial court overruled the motion to suppress.

{¶7} The case proceeded to a trial by jury commencing on February 6, 2017. During the trial, Dr. Renee Robinson, forensic pathologist at the Stark County Coroner's Office, testified that she performed the autopsy of Hailey Miku, as further detailed *infra*. Tr. at 514-515. Dr. Robinson testified that she determined that homicide was the manner of death concerning Hailey. Tr. at 559. However, upon cross-examination, Dr. Robinson could not point to a specific single injury that caused the death of Hailey. Tr. at 566.

{¶8} Later during the trial proceedings, appellant moved the court to instruct the jury on the lesser included offense of involuntary manslaughter. The trial court overruled the motion.

{¶9} The jury ultimately found appellant guilty of the charged offenses, and the court sentenced him to an aggregate prison term of 23 years-to-life in prison (15 years-to-life for murder and a consecutive eight-year prison term for child endangering).

{¶10} On April 3, 2017, appellant filed a notice of appeal. He herein raises the following seven assignments of Error:

{¶11} "I.     THE TRIAL COURT ERRED WHEN IT OVERRULED APPELANT'S [SIC] MOTON [SIC] TO SUPPRESS.

{¶12} "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶13} "III. THE TRIAL COURT ERRED IN ADMITTING PHOTOS WHICH WERE INFLAMMATORY AND HIGHLY PREJUDICIAL.

{¶14} "IV. THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF PRIOR BAD ACTS.

{¶15} "V. THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER.

{¶16} "VI. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSITANCE [SIC].

{¶17} "VII. THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE APPELLANT'S CONVICTIONS AS ALLIED OFFENSES."

I.

{¶18} In his First Assignment of Error, appellant contends the trial court erred in denying his motion to suppress the statements he made to Detective Mongold concerning his conduct toward the victim, Hailey. We disagree.

{¶19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact.

Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶20} The gist of appellant's suppression argument is that Detective Mongold, following appellant's waiver of rights pursuant to *Miranda*, *infra*, improperly induced him to make incriminating statements by allegedly implying appellant would receive a lesser jail sentence and promising appellant that he could see his girlfriend, Jessica Bender, after the interview.

{¶21} A waiver of the Fifth Amendment right not to incriminate oneself must be made voluntarily, knowingly and intelligently. *State v. Abdi*, 4th Dist. Athens No. 09CA35, 2011-Ohio-3550, ¶ 55, citing *Miranda v. Arizona* (1966), 384 U.S. 436, 444. A suspect's decision to waive his or her Fifth Amendment privilege is made voluntarily absent evidence that his or her will was overborne and his or her capacity for self-determination was critically impaired because of coercive police conduct. *State v. Collins,* 5th Dist. Richland

No. 2003–CA–0073, 2005–Ohio–1642, ¶ 141, citing *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954. A "totality of the circumstances test" is applied to this question. *See, e.g., State v. Burgett,* 3rd Dist. Marion No. 9–09–14, 2009–Ohio–5278, ¶ 39.

**{¶22}** During the suppression hearing, Detective Mongold testified that appellant asked multiple times if he could see Jessica Bender. Supp. Tr. at 22, 33-35. Mongold stated he told appellant that he could make it possible for him to see Bender after the interview. *Id.* Mongold testified on cross examination that appellant asked what kind of jail sentence he was looking at, to which the detective responded that it depended upon how truthful he was to law enforcement. Supp. Tr. at 37. Mongold also testified upon cross-examination that he told appellant he could see Bender if he was honest with him. Supp. Tr. at 38.

**{¶23}** As appellant notes, the Second District Court of Appeals, in *State v. Arrington* (1984), 14 Ohio App.3d 111, 470 N.E.2d 211, held as follows: "Where an accused's decision to speak was motivated by police officers' statements constituting 'direct or indirect promises' of leniency or benefit and other representations regarding the possibility of probation which were misstatements of the law, his incriminating statements, not being freely self-determined, were improperly induced, involuntary and inadmissible as a matter of law." *Id.* at paragraph 2 of the syllabus. Nonetheless, general assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession. *See State v. Scholl*, 10th Dist. Franklin No. 12AP-309, 2012-Ohio-6233, ¶ 15. We also note that under R.C. 2929.12(D) and (E), one of the factors for consideration of the likelihood of recidivism is whether or not an offender shows "genuine

remorse for the offense." Upon review, we find Detective Mongold's unspecific statement that appellant's sentence "depends on how honest you are with us" did not constitute a misstatement of the law rendering appellant's statements involuntary and inadmissible under *Arrington*.

{¶24} In regard to the detective's assurances that appellant could talk to his girlfriend, Jessica, we find appellant divorces this question from its context. The record indicates that after appellant presented his initial exculpatory version of events, Det. Mongold confronted him with information that had been obtained from other sources, including Jessica. Supp. Tr. at 44. Appellant then persisted in his request to see and talk with her. Likely seeking to prevent appellant from finding out what Jessica had reported and thereby allowing appellant the opportunity to line up his story with her report, Mongold understandably replied that he would see about allowing appellant to talk with Jessica after the interrogation was complete, and not before. We are unpersuaded that the detective's actions constituted a misrepresentation of the law or other coercive technique utilized to improperly induce a confession by appellant.

{¶25} Accordingly, we hold the trial court did not err in denying appellant's motion to suppress.

{¶26} Appellant's First Assignment of Error is overruled.

II.

{¶27} In his Second Assignment of Error, appellant maintains his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

*Sufficiency of the Evidence*

**{¶28}** In reviewing a defendant's claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶29}** Appellant was convicted of murder under R.C. 2903.02(B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶30}** Appellant was also convicted of child endangering under R.C. 2919.22(B)(1) and/or (B)(2), which read *in toto* as follows:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child;

(2) Torture or cruelly abuse the child[.]

**{¶31}** In the case *sub judice,* one of the State's key witnesses was Dr. Renee Robinson, a forensic pathologist with the Stark County Coroner's Office, who conducted the autopsy of Hailey's body. Among other things, she noted that Hailey weighed 27.2 pounds, which, according to her medical records, was down from her October 2015 weight of just under 28.4 pounds. Tr. at 523. According to Dr. Robinson, Hailey was in just the 5th

percentile for weight and body mass index for a child of her age. Tr. at 524. At the time of Hailey's death, there were no contents inside the stomach, and a toxicological screen of her blood and liver did not show the presence of Tylenol or Ibuprofen, in contradiction to what appellant initially told Det. Mongold. Tr. at 521, 557. There were numerous abrasions to the girl's face, indicating recent blunt trauma. One of her eyes was swollen, and there was "evidence that this eye [had] been bruised previously." Tr. at 526. Dr. Robinson also noted a tear in the skin behind her one ear, which the presence of a significant amount of dead skin on that part of the scalp. Hailey's hair was missing from his area, and some of her other hair easily came out in Dr. Robinson's hands during the autopsy. There was also some scabbing on her scalp, and skin had been taken off areas of the girl's face. Dr. Robinson concluded that none of these injuries were caused by a fall, but were instead the result of blunt trauma. Tr. at 520-533, 548.

{¶32} Dr. Robinson also noted green discoloration around Hailey's abdomen, and a collection of fluid on her hip bone. This indicated to Dr. Robinson that something was "not right" with Hailey's environment or "internal body chemistry" since these are signs usually seen when a dead body has been decomposing. Tr. at 535. On her body, in general, there were "multiple medical bruises" and "multiple areas of abraded skin." *Id.* Hailey's torso also had perimortem abrasions, which is indicative that these injuries were caused while she was dying. There was also an abrasion to the girl's labia. After examining Hailey's front side, Dr. Robinson noted bruising all along the girl's back area. Along with bruising, scabbing, and healing lesions on her buttocks, there were bruises up and down Hailey's spine, corresponding with the protrusions of her spine. According to Dr. Robinson, such injuries are often seen who have been bed-ridden for some time, producing "bed

sores," which could also have been caused by standing against a wall for a long time. Tr. At 542. Dr. Robinson also testified that although most children do not lose any teeth until the age of six, when permanent teeth start coming in, Hailey at age three was already missing teeth and one front tooth was merely sitting in its socket. Dr. Robinson also noted bruising and contusions on the girl's legs, which again, were not the results of a fall according to the doctor, but were instead the result of blunt trauma. Tr. at 534-546.

{¶33} Dr. Robinson also opined that the foam found around Hailey's mouth at the time of her demise would indicate a "slower death." Blood and other bodily fluids were leaking inside Hailey's body, collecting in her lungs and then being expelled through her mouth. An examination of Hailey's internal organs showed the presence of "bacterial overgrowth" in her heart, brain, eyes, and kidneys, related to bacteria in the girl's bloodstream. These organs also indicated longstanding inflammation. In addition, the small intestine showed evidence of ongoing bleeding, which results when the body's clotting agents are consumed in dealing with bleeding and inflammation in other parts of the body. In addition, the presence of bone marrow emboli in Hailey's lungs indicated the girl's bones had suffered trauma. Based on the status of her internal organs, Hailey would have needed hospitalization. Tr. at 546-557.

{¶34} Dr. Robinson's conclusion was that Hailey's manner of death was a homicide. As to cause of death, the doctor testified:

*** My final anatomic diagnosis reads that she sustained inflicted trauma of varying ages of her head, face and scalp, of her torso, which is your trunk, and the extremities. There was evidence of neglect, both of general care and of medical care. There was sequelae of trauma and

neglect which is things that can happen as a result of the trauma and neglect, and everything I talked about, the chronic inflammation and the things that I found in the organs are sequelae of that. With the final diagnosis coming under the heading of all these things, being the result of combined effects of acute and chronic inflicted trauma and neglect. Acute means short-term, chronic means long-term. ***.

Tr. at 558-559.

**{¶35}** The State also called Jessica Bender, who lived with appellant during the pertinent times in this case. She recalled numerous instances of witnessing appellant hitting and slapping Hailey, hearing "thud" sounds from other rooms, observing the ear and scalp wound on the girl, and instances of appellant locking Hailey in her room for as long as a day and a half. Tr. at 388-415. Hailey was "always hungry" and would quickly drink any beverages Jessica gave her. Tr. at 394. Jessica said she last saw Hailey alive the night before she died. The next morning, appellant came downstairs about 8:30 AM, telling her that he had given the girl some Tylenol and that she wanted to go back to bed. According to Jessica, appellant left the house to get some cigarettes at about 9:00 or 10:00 AM, and after returning, he went upstairs and found her lifeless body at about 11:00 AM. After screaming out "she won't wake up," appellant called 911 and brought Hailey down to the mattress in the living room. Tr. at 419.

**{¶36}** As noted in our recitation of facts, appellant made significant confessions to Det. Mongold and lesser incriminating statements to some of the responding Canton officers. Appellant himself further exonerated Jessica from any wrongdoing in his statements. A defendant's confession may be construed as direct evidence of his or her

guilt. *See State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, 2015 WL 9305491, ¶ 30, citing *State v. Watts,* 1st Dist. Hamilton No. C–810091, 1981 WL 10176, fn. 1.

**{¶37}** Appellant's chief contention for purposes of his sufficiency of the evidence claim appears to be that DNA evidence was not presented linking him to Hailey's injuries. However, upon review of the record, we find sufficient direct and circumstantial evidence existed for reasonable fact finders to conclude beyond a reasonable doubt that appellant engaged in child endangering and caused the resulting death of Hailey as charged. We thus hold said convictions were supported by the sufficiency of the evidence.

### Manifest Weight of the Evidence

**{¶38}** In regard to appellant's manifest weight challenge to his convictions, our standard of review is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶39}** Appellant's focus is on the credibility of Jessica Bender. He urges that she made "multiple statements" to law enforcement officials, and notes that she was alone in the home with the child for a time on the morning of her death and that she was concerned about maintaining custody of her own children once the investigation began. Appellant

also maintains that his explanation to police that the girl fell down the stairs should have created reasonable doubt for the jurors. However, bearing in mind the extent and varying nature of the child's multiple indicators of abuse, upon review of the record under the standard of *Martin,* we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. Appellant's murder and child endangering convictions were not against the manifest weight of the evidence.

{¶40} Appellant's Second Assignment of Error is therefore overruled.

III.

{¶41} In his Third Assignment of Error, appellant argues the trial court erred in allowing into evidence certain autopsy photographs. We disagree.

{¶42} Under Evidence Rules 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. *See also State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Under Evidence Rule 403(A), the probative value of the evidence must be weighed against the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 611(A) further provides, in relevant part, the trial court "shall exercise reasonable control over the mode and order of ... presenting evidence so as ... to make the ... presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568. "The real question is whether

the probative value of such photographs is outweighed by the danger of prejudice to the defendant." *Woodards* at 25, 215 N.E.2d 568.

**{¶43}** We note appellant failed to object to the introduction of the autopsy photographs in question. Error not raised in the trial court must be plain error in order to reverse. *State v. Johnson,* 5th Dist. Richland No. 98–CA–42, 1998 WL 818026, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.

**{¶44}**   In the case *sub judice*, the trial court admitted sixteen autopsy photographs, twelve of which were of the child victim, Hailey. The State in this instance presented the case that Hailey died as a result of trauma over a three-month period, exacerbated by appellant's repeated failure to obtain even basic medical treatment for the child in the midst of his horrific perpetuation of child abuse. We therefore are unpersuaded upon review that the trial court committed plain error or abused its discretion in admitting the autopsy photographs at issue.

**{¶45}**   Appellant's Third Assignment of Error is overruled.

IV.

**{¶46}**   In his Fourth Assignment of Error, appellant contends the trial court erred in admitting certain testimony from Jessica Bender regarding his prior acts of violence toward Jessica and his anger management issues. We disagree.

**{¶47}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No.1999CA00027, 2000 WL 222190. However, we again note that appellant, except concerning a question about the care of his dog, did not object to the testimony in question. Error not raised in the trial court must be plain error in order to reverse. *State v. Johnson, supra.* In *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452, the Ohio Supreme Court reiterated that "* * * the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *Id.* at 227, 448 N.E.2d 452.

**{¶48}** Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ***"

**{¶49}** "Other acts" evidence is admissible only if there is substantial proof that the alleged other acts were committed by the defendant and such evidence tends to show one

of the matters enumerated in Evid.R. 404(B). *State v. Wagner,* 5th Dist. Licking 03 CA 82, 2004–Ohio–3941, ¶ 43, citing *State v. Echols* (1998), 128 Ohio App.3d 677, 692, 716 N.E.2d 728. However, even if disputed testimony was erroneously admitted at trial, such evidence may be found merely cumulative and not prejudicial where there is other evidence establishing a defendant's identity as the perpetrator of abuse. *See State v. Young,* 2nd Dist. Montgomery No. 19466, 2003-Ohio-4706, ¶ 46. In this instance, as the State aptly points out in its response, appellant admitted in his statements to police that he suffered from anger management issues, that he took out his frustrations on Hailey, and that he often could not stop himself when he beat her. This constituted independent evidence upon which the jury could base its determinations.

**{¶50}** We therefore hold the trial court's decision allowing the disputed testimony by Jessica in regard to Evid.R. 404(B) did not constitute plain error or an abuse of discretion warranting reversal.

**{¶51}** Accordingly, appellant's Fourth Assignment of Error is overruled.

V.

**{¶52}** In his Fifth Assignment of Error, appellant contends the trial court erred by not instructing the jury, as he requested, on the lesser offense of involuntary manslaughter. We disagree.

**{¶53}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Klusty,* 5th Dist. Delaware No. 14 CAA 07 0040, 2015–Ohio–2843, ¶ 25. Because the failure to properly instruct the jury is not in most instances structural error,

the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *State v. Bleigh,* 5th Dist. Delaware No. 09–CAA–03–0031, 2010–Ohio–1182, ¶ 119, citing *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, 144 L .Ed.2d 35.

**{¶54}** Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus.

**{¶55}** Appellant herein requested a jury instruction on involuntary manslaughter under R.C. 2903.04(A), which is causing the death of another "as a proximate result of committing or attempting to commit a felony." Appellant urges that it was "possible" for the jury to have acquitted him of murder and convicted him of involuntary manslaughter. Appellant's Brief at 21. However, the Ohio Supreme Court has cautioned: "To require an instruction to be given to the jury every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. *** The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict." *State v. Shane,* 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272, 275 (parenthetical text in original).

{¶56} In this instance, the only child endangering charges that fit the distressing facts about Hailey's treatment by appellant were the two alternative versions charged in the indictment, both of which were second-degree felonies and the predicate offenses for murder under R.C. 2903.02(B). The evidence heard by the jury showed that Hailey died a horrible death as a result of appellant's repeated beatings and abuse, causing internal injuries that went untreated. The evidence simply would not support a lesser charge of child endangering and an acquittal of murder as charged. Upon review of the record, we are unpersuaded that the trial court's refusal to give an involuntary manslaughter instruction at the request of defense counsel was unreasonable, arbitrary, or unconscionable.

{¶57} Accordingly, appellant's Fifth Assignment of Error is overruled.

VI.

{¶58} In his Sixth Assignment of Error, appellant contends he was deprived of constitutional right to the effective assistance of trial counsel. We disagree.

{¶59} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability

of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶60}** In addressing this claim, we also remain mindful that "[a] defendant is entitled to a fair trial but not a perfect one." *See State v. Bleigh,* 5th Dist. Delaware No. 09-CAA-03-0031, 2010-Ohio-1182, ¶ 133, quoting *Bruton v. United States* (1968), 391 U.S. 123, 135–136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (internal quotations omitted).

*Claim of Ineffective Assistance re: Lack of Inquiry into Substance Use*

**{¶61}** Appellant first argues his trial counsel was ineffective in failing to inquire or present evidence regarding his alleged use of alcohol and/or drugs, which may have impacted the trial court's analysis of the voluntariness of his statements to law enforcement concerning Hailey's death. However, our review on appeal is limited to those materials in the record that were before the trial court. *See*, *e.g.*, *State v. DeMastry,* 155 Ohio App.3d 110, 119-120, 799 N.E.2d 229, 2003-Ohio-5588, citing *State v. Ishmail* (1978), 54 Ohio St.2d 402, 377 N.E.2d 500. In this instance, we find appellant's argument relies on information dehors the record, and invites unwarranted speculation on our part in the

present direct appeal. *See, e.g.*, *State v. Fornshell*, 5th Dist. Fairfield No. 10 CA 48, 2011-Ohio-3560, ¶ 18.

*Claim of Ineffective Assistance re: Failure to Object to Victim Photographs*

**{¶62}** Appellant next challenges his trial counsel's decision not to attempt to block autopsy photographs of the victim (*see* Assignment of Error III, *supra*). However, in light of our previous analysis and determinations, even if defense counsel had objected, we are unpersuaded that the danger of undue prejudice caused by admission of the photographs would have substantially outweighed their probative value.

*Claim of Ineffective Assistance re: Failure to Challenge Prior "Bad Acts" Evidence*

**{¶63}** Appellant lastly challenges his trial counsel's failure to challenge, via a motion in limine and/or objecting during trial, evidence regarding appellant's prior failure to take his mental health medications, his lack of proper care of his dog, and his past abusive treatment his girlfriend, Jessica Bender.

**{¶64}** Evid.R. 404(B) states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *."

**{¶65}** We first note it is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers,* 9th Dist. Summit No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted).

**{¶66}** Upon review, given the extensive evidence of the injuries to the victim and the abuse and neglect she suffered, assuming trial counsel's decision not to object in this regard fell below an objective standard of reasonable representation, we are unpersuaded that appellant was prejudiced thereby.

### *Conclusion*

**{¶67}** Having considered the foregoing claims, we hold appellant was not deprived of the effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 and §16 of the Ohio Constitution.

**{¶68}** Appellant's Sixth Assignment of Error is overruled.

VII.

**{¶69}** In his Seventh Assignment of Error, appellant argues, based on a theory of allied offenses of similar import, that the trial court erred in not merging his sentences for murder and child endangering. We disagree.

**{¶70}** R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions. *See State v. Jackson,* 2nd Dist. Montgomery No. 24430, 2012-Ohio-2335, 2012 WL 1900373, ¶ 133, citing *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 45. Appellate review of an allied offense question is *de novo. State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

**{¶71}** R.C. 2941.25 states as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶72}** Under the Ohio Supreme Court's decision in *State v. Earley,* 145 Ohio St.3d 281, 285, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11, we now apply a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 12, citing *State v. Ruff,* 143 Ohio St.3d 114, 143 N.E.3d 114, 2015-Ohio-995, ¶ 31. We also note in *Ruff,* the Court had further developed the analytical framework for courts to apply regarding the concept of "import," holding in part as follows: "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff,* at paragraph two of the syllabus.

**{¶73}** Appellant herein was convicted of murder under R.C. 2903.02(B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or

second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶74}** Appellant was also convicted of child endangering under R.C. 2919.22(B)(1) and/or (B)(2), which read *in toto* as follows:

> (B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
>
> (1) Abuse the child;
>
> (2) Torture or cruelly abuse the child[.]

**{¶75}** Appellant directs us to *State v. Henderson*, 6th Dist. Wood No. WD-16-012, 2017-Ohio-2900, which is essentially on point with the issue before us, although it appears to involve a much shorter timeframe of child abuse. The Sixth District Court of Appeals therein held:

> Given the fact that the endangering children count was the predicate offense for appellant's murder conviction, we agree with appellant that the trial court erred in failing to merge the two offenses at sentencing. Indeed, the murder count was predicated upon the same conduct that gave rise to the endangering children conviction, appellant's abuse of [the child victim] that resulted in serious physical harm and, eventually, death. The offenses were of similar import, and appellant committed the offenses with one act and one animus.

**{¶76}** *Id.* at ¶ 36.

**{¶77}** However, our reading of the Ohio Supreme Court's rationale in *Earley*, *supra*, leads us to a different conclusion than that of *Henderson*.

**{¶78}** In *Earley*, the Court considered whether a trial court could impose cumulative sentences for both aggravated vehicular assault (R.C. 2903.08(A)(1)(a)) and operating a motor vehicle while under the influence of alcohol or drugs ("OVI") (R.C. 4511.19(A)(1)(a)) when the OVI was the predicate conduct for the aggravated vehicular assault. In determining the offenses were not required to merge, the Court first noted that by criminalizing aggravated vehicular assault, the General Assembly had "emphasized the necessity of a strong punishment for and deterrent against individuals causing serious physical harm while driving under the influence." *Id.* at ¶ 15. In lieu of focusing on a "separate animus" analysis, the Court emphasized that aggravated vehicular assault "has a different import and significance" than the offense of driving under the influence, because "aggravated vehicular assault necessarily involves causing serious physical harm to another person." *Id.* On the other hand, a misdemeanor OVI offender commits his or her offense "regardless of any subsequent consequences that occur due to the impaired driver's actions." *Id.* The Court thus concluded: "There is a legitimate justification for criminalizing each of these offenses separately, and R.C. 2941.25 permits separate convictions for both ***." *Id.*

**{¶79}** In that light, we find that the murder statute at issue in this matter is intended to punish the taking of a human life while engaging in violence against another, while the proscription against child endangering, in principle, is for the separate overall purpose of protecting children against any type of abuse or torture, which, in this instance, resulted in serious physical harm and eventual death. Therefore, even though the two offenses were

based on the same course of conduct timeframe (November 26, 2015 through March 4, 2016), we hold the trial court in the case *sub judice* did not err in refusing to merge the two offenses for sentencing.

**{¶80}**   Appellant's Seventh Assignment of Error is overruled.

**{¶81}**   For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.

JWW/d 0404