[Cite as *State v. Harper*, 2022-Ohio-1966.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J. |
| -vs- | |
| | Case No. 21CA000019 |
| JACOB HARPER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:   Appeal from the Guernsey County Court
                            of Common Pleas, Case No. 20 CR 224

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     June 10, 2022

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

LINDSEY K. ANGLER                       GEORGE URBAN
Prosecuting Attorney                    116 Cleveland Avenue, N.W. – Ste. #808
Guernsey County Prosecutor's Office     Canton, Ohio 44702

JASON R. FARLEY
Assistant Prosecuting Attorney
Guernsey County Prosecutor's Office
627 Wheeling Avenue
Cambridge, Ohio 43725

*Hoffman, J.*

**{¶1}** Defendant-appellant Jacob Harper appeals the judgment entered by the Guernsey County Common Pleas Court convicting him of aggravated murder (R.C. 2903.01(A)) with a firearm specification, murder (R>C. 2903.02(A)) with a firearm specification, and improper handling of a firearm in a motor vehicle (R.C. 2923.16(B)) and sentencing him to an aggregate term of life imprisonment without the possibility of parole. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** In the evening of August 22, 2020, Alexander Anderson called his friend Paige Willis for a ride after his motorcycle broke down. Willis took Anderson to her house, where they did methamphetamine. During the early morning hours of August 23, 2020, Anderson began texting with his friend Katelan who had his car. Willis agreed to drive Anderson from Licking County to Guernsey County on the morning of August 23 to retrieve Anderon's car.

**{¶3}** Anderson was driving Willis's vehicle in a rural area of Guernsey County. While Willis was giving Anderson a "blow job," Anderson lost control of the car and it became wedged between trees in a ditch. Anderson told Willis his car was right up the road, and he would walk to retrieve his car. After he retrieved his car, they could figure out what to do about Willis's car. Anderson returned about an hour later with his car.

**{¶4}** While Anderson and Willis were trying to figure out how to get her car out, a black SUV driven by Kasey Means drove by, then turned around and came back. Appellant got out of the SUV. Anderson stated he got his car from Katelan at Daniel Welch's house. Appellant also knew Daniel. Anderson told Appellant he was Daniel's

"plug," slang for drug dealer. Appellant said his dad could help with the car, and he and Means left.

{¶5} Means drove to Appellant's house, where Appellant yelled for a man she knew as "Jack Jack." After speaking to Jack Jack outside of Means's hearing, both men got in the car. They had no conversation in the car. They returned to where Anderson and Willis were waiting.

{¶6} Appellant got out of the car and began talking to Anderson. The conversation was not hostile or aggressive. Means saw Appellant begin to get irritated, and heard Appellant say to Anderson, "You know what it is." Tr. 358. Appellant was holding a gun to Anderson. Anderson did not have a gun, and his hands were hanging down at his sides. Appellant shot Anderson once. As Anderson backed away, Appellant shot him two more times. Appellant then jumped in the car and told Means to drive away.

{¶7} Willis was putting her bags into Anderson's car, and heard a "pop pop" sound like a gun. Tr. 319. She saw Anderson stumbling backwards, then heard more shots. Appellant got in the black SUV, and it drove away. Anderson fell partly into the vehicle. He told Willis he was dying.

{¶8} Willis heard the black SUV stop. Appellant and Jack Jack remembered Willis was at the scene and could identify them, and they wanted to "get rid" of Willis. Tr. 365. When Anderson heard the SUV stop, he told Willis to leave. She pushed him out of the vehicle, and drove away. Willis called 911, and led police to where Anderson's dead body was found lying in the road. A gun was found in Anderson's car. While Willis knew Anderson had a gun, she did not see him with a gun on August 23, and she did not see him with a gun in his hand while he was talking to Appellant.

{¶9}  Meanwhile, Appellant told Means they needed to go somewhere safe.  She drove Appellant to her mom's house in Zanesville.  Means was afraid of Appellant, as she had witnessed him shoot Anderson, and he reminded her, "no face, no case."  Tr. 369. Appellant convinced Means to drive him back to Guernsey County.  She told her family if they did not hear from her in an hour to call the police.  She was crying as they drove back to Guernsey County, and Appellant yelled at her, calling her a crybaby.  Appellant instructed her to park at an apartment complex in Newcomerstown.  He got out of the car. Means told Appellant she wasn't going with him to Guernsey County, and she got in her car and left.    Appellant was eventually apprehended in West Virginia.

{¶10} Appellant was indicted by the Guernsey County Grand Jury on aggravated murder and murder, each with firearm specifications, and improper handling of a firearm in a motor vehicle.  The case proceeded to jury trial in the Guernsey County Common Pleas Court.

{¶11} At trial, Appellant testified when they returned to the scene where Willis's car was in the ditch, he told Anderson he could not help with the car.  Appellant tried to purchase meth from Anderson for $500.  He testified when he reached into his pocket for the money, Anderson brought a gun from around his back and pointed it at Appellant.  At this point, Appellant testified he realized he was being robbed, and pulled out his own gun and fired.  He testified Anderson fell against the car door, then started bringing his gun back up toward Appellant.  Appellant testified he fired blindly three times, then jumped in the SUV and left the scene.

{¶12} The jury found Appellant guilty of all charges.  The trial court found the convictions of aggravated murder and murder merged, and the State elected to have

Appellant sentenced for aggravated murder. The trial court sentenced Appellant to a term of incarceration of life without the possibility of parole for aggravated murder, and eighteen months incarceration for improper handling of a firearm in a motor vehicle, for an aggregate term of incarceration of life without possibility of parole. It is from the June 30, 2021 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT.

II. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.

III. THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT DID NOT USE THE FORCE USED IN SELF DEFENSE.

IV. THE TRIAL COURT COMMITTED ERROR BY FAILING TO PRESENT A JURY INSTRUCTION ON A LESSER INCLUDED OFFENSE PREDICATED ON THE VICTIM'S USE OF A GUN THAT PROVOKED THE DEFENDANT AND AGGRAVATED ASSAULT BY THE APPELLANT.

V. THE TRIAL COURT ERRED BY IMPOSING THE SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE.

I., II.

{¶13} In his first and second assignments of error, Appellant argues the judgment convicting him of aggravated murder and murder are against the manifest weight and sufficiency of the evidence.

{¶14} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶15} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).\

{¶16} R.C. 2903.01(A) defines aggravated murder, "No person shall purposely, and with prior calculation and design, cause the death of another." Appellant specifically argues there is no evidence to establish he acted with prior calculation and design.

{¶17} The Ohio Supreme Court held it is not possible to formulate a bright-line test to distinguish between the presence or absence of prior calculation and design, but instead each case turns on the particular facts and evidence presented at trial. *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997). In *Taylor v. Mitchell*, 296 F.Supp.2d 784 (2003), the

habeas corpus action considered by the U.S. Northern District of Ohio Federal Court regarding the conviction reviewed by the Ohio Supreme Court in *Taylor*, *supra*, the federal court summarized Ohio law regarding prior calculation and design as follows:

In view of the understandable lack of a bright line rule governing determinations of whether the proof shows prior calculation and design, Ohio courts have consistently considered various factors in addition to those - the defendant's relationship with the victim, the thought given by the defendant to the means and place of the crime, and the timing of the pertinent events - recited in *Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d 82, when determining whether the defendant engaged in prior calculation and design.

Among these other, frequently considered factors are:

—whether the defendant at any time expressed an intent to kill.

—there was a break or interruption in the encounter, giving time for reflection.

—whether the defendant displayed a weapon from the outset.

—whether the defendant retrieved a weapon during the encounter.

—the extent to which the defendant pursued the victim.

—the number of shots fired.

**{¶18}** *Id.* at 821–822, internal citations omitted.

**{¶19}** The state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways, including evidence the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill, such as where the victim is killed in a cold-blooded, execution-style manner. *State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, ¶ 40.

**{¶20}** In the instant case, during the initial meeting between Anderson and Appellant, Appellant discovered he and Anderson had a mutual friend, and Appellant was the "plug," or meth dealer, for this mutual friend. While Appellant claimed he was going to get equipment to help Willis and Anderson get their car out of the ditch, instead he went and talked to his friend, "Jack Jack." While Means did not hear the conversation between Appellant and his friend, they were quiet on the ride back to the location where Anderson and Willis were located, and did not have materials with them to attempt to retrieve the vehicle. Willis and Means both testified the encounter between Anderson and Appellant was not hostile. Kasey testified Appellant displayed the weapon and said, "You know what it is," to Anderson. Appellant shot Anderson one time, after which Anderson backed away. Appellant then shot Anderson two more times. We find the evidence was sufficient from which the jury could find Appellant shot the victim in a cold-blooded, execution style manner, providing circumstantial evidence of a preconceived plan to kill. *See Hicks, supra.*

**{¶21}** Appellant also argues the evidence was insufficient to demonstrate he "purposely" killed Anderson, as required to support his murder conviction. Murder is defined by R.C 2903.02(A), "No person shall purposely cause the death of another." R.C. 2901.22(A) defines the mental state of "purposely":

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

**{¶22}** Counsel for Appellant conceded at trial there was sufficient evidence to go to the jury on the crime of murder, and only argued there was insufficient evidence of prior calculation and design required to prove aggravated murder. Tr. 462. We find Means's testimony Appellant pointed a gun at Anderson and fired three times sufficient evidence from which the trier of fact could conclude Appellant acted purposely in causing the death of Anderson.

**{¶23}** Appellant argues the testimony of Means and Willis was not credible, while his version of the events is credible. He argues his version of the events is supported by the physical evidence at the scene. We find the physical evidence largely unhelpful in this case, as the only pertinent dispute between Appellant's version of the events and the testimony of Willis and Means is whether Anderson pointed a gun at Appellant, causing Appellant to fire in self-defense, or whether Anderson was unarmed at the time Appellant shot him. Both women testified Anderson did not have a gun during the encounter. Although a gun was found by police under a book bag and other items on the passenger seat of Anderson's vehicle, we find the jury did no lose its way in finding the testimony Anderson did not have a weapon in his hands at the time of the murder to be credible. The judgment is not against the manifest weight of the evidence.

**{¶24}** Appellant's first and second assignments of error are overruled.

III.

**{¶25}** In his third assignment of error, Appellant argues the State failed to prove beyond a reasonable doubt he did not shoot Anderson in self-defense.

**{¶26}** The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

**{¶27}** Pursuant to R.C. 2901.05, if there is evidence presented at trial which tends to support a claim the defendant used force against another in self-defense or in defense of another, the State must prove beyond a reasonable doubt the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the State to disprove at least one of the elements of self-defense beyond a reasonable doubt. *State v. Williams*, 5th Dist. Stark No. 2019CA00188, 2021-Ohio-443, ¶17.

**{¶28}** In this case, the State does not contest there was evidence tending to show Appellant acted in self-defense. Therefore, the State was required to disprove self-defense involving deadly force by proving beyond a reasonable doubt Appellant either: (1) was at fault in creating the situation giving rise to the affray; or (2) did not have a bona fide belief he was in imminent danger of death or great bodily harm for which the use of

deadly force was his only means of escape, or (3) violated a duty to retreat or avoid the danger. *Id.* at ¶18.

**{¶29}** The State need only disprove one of the elements of self-defense beyond a reasonable doubt. *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10. In reviewing a sufficiency of the evidence challenge involving self-defense, we must view the evidence in a light most favorable to the State, and determine whether any rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. *Id.* at ¶19, *citing State v. Davis*, 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202, ¶ 27; *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶51.

**{¶30}** Kasey Means testified Appellant pulled a gun out and shot Anderson, while Anderson was not holding a gun, and had his hands at his sides. She testified after Appellant shot Anderson the first time, Anderson clutched his stomach and backed away, whereupon Appellant shot Anderson two more times. Paige Willis testified Anderson did not have a gun in his hand when he was talking to Appellant  Both witnesses testified there was not a fight or altercation prior to the shooting. We find this testimony is sufficient evidence from which a rational trier of fact could determine the State proved Appellant did not have a bona fide belief he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape.

**{¶31}** The third assignment of error is overruled.

IV.

**{¶32}** In his fourth assignment of error, Appellant argues the trial court erred in failing to instruct the jury on the lesser included offenses of voluntary manslaughter and involuntary manslaughter, with aggravated assault as the predicate offense.

**{¶33}** A jury charge on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser or inferior offense. *See, e.g., State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to the defendant. *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. *State v. Shane*, 63 Ohio St.3d at 632–633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006–Ohio–791 at ¶ 134.

**{¶34}** In *Shane, supra,* the Ohio Supreme Court cautioned:

Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, e.g., *State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378

N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra*, 50 Ohio St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

**{¶35}** 63 Ohio St.3d at 632–33, 590 N.E.2d at 275.

**{¶36}** In the instant case, Appellant presented a claim of self-defense, which, if accepted by the jury, would be a complete defense to the crime charged. Whether or not a defendant raises a complete defense to the charged crime, the State has the burden to prove beyond a reasonable doubt all of the elements of the crime charged. *State v. Wine*,

140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 33. The fact the evidence could be interpreted by the jury as questionable on a single element does not mean the defendant committed no crime. *Id.* "Simply put, a jury can both reject an all-or-nothing defense—e.g., alibi, mistaken identity, or self-defense—and find that the state has failed to meet its evidentiary burden on an element of the charged crime." *Id.* In such a case, "if due to some ambiguity in the state's version of the events involved in a case the jury could have a reasonable doubt regarding the presence of an element required to prove the greater but not the lesser offense, an instruction on the lesser included offense is ordinarily warranted." *Id., citing State v. Solomon*, 66 Ohio St.2d 214, 221, 421 N.E.2d 139.

**{¶37}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Miku*, 5th Dist. Stark No. 2017 CA 00057, 2018-Ohio-1584, 111 N.E.3d 558, ¶ 53.

**{¶38}** Appellant requested the trial court instruct the jury on involuntary manslaughter with a predicate offense of aggravated assault. He argued there was sufficient evidence presented through Appellant's own testimony from which the jury could find Appellant was provoked by Anderson into shooting him. The State disagreed, and suggested if the court was inclined to give a lesser included offense instruction, the State would prefer voluntary manslaughter instead of involuntary manslaughter, which includes much of the same language as aggravated assault. The trial court stated it found

no evidence presented about sudden passion or a sudden fit of rage, and denied the request.  Tr. 566-69.

{¶39}  Involuntary manslaughter is defined, "No person shall cause the death of another…as a proximate result of the offender's committing or attempting to commit a felony."  Appellant suggested the predicate felony offense in this case is aggravated assault, as defined by R.C. 2903.12:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

{¶40}  Voluntary manslaughter is defined by R.C. 2903.03:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

{¶41} In the instant case, there was no evidence presented demonstrating Appellant acted under the influence of sudden passion or in a sudden fit of rage, brought on by serious provocation occasioned by the victim.  The State's witnesses testified the victim did nothing to provoke the attack, and there was no evidence of an altercation prior to Appellant pulling a gun and shooting the victim.  Appellant testified solely he believed he was being robbed when the victim pulled a gun on him, and he shot the victim in self-defense. Nothing in Appellant's testimony suggests the victim provoked him into a sudden fit of rage.  Because there was no evidence to support the giving of an instruction on involuntary manslaughter with a predicate offense of aggravated assault or an instruction on voluntary manslaughter, we find the trial court did not abuse its discretion  in denying Appellant's request for a lesser-included offense instruction.

{¶42}  The fourth assignment of error is overruled.

V.

{¶43} In his fifth assignment of error, Appellant argues the trial court erred in sentencing him to life imprisonment without possibility of parole for the crime of aggravated murder.  He specifically argues the trial court failed to consider rehabilitation when weighing the statutory factors set forth in R.C. 2929.11 and 2929.12.

{¶44} R.C. 2953.08 governs appellate review of felony sentencing. R.C. 2953.08(A) states "[i]n addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on [one of the grounds listed in subsections (A)(1) through (A)(5) ]".  In turn, R.C. 2953.08(D)(3)

provides: "A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

**{¶45}** The Ohio Supreme Court has held R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder which is based on constitutional grounds. *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶22.

**{¶46}** However, in the instant case, Appellant does not challenge his sentence on constitutional grounds, but rather argues the trial court's sentence was based on an improper weighing of the statutory factors. As such, pursuant to R.C. 2953.08(D)(3) we are without statutory jurisdiction to review Appellant's sentence.

**{¶47}** The fifth assignment of error is overruled.

**{¶48}** The judgment of the Guernsey County Common Pleas Court is affirmed.


By: Hoffman, J.

Wise, Earle, P.J.  and

Gwin, J. concur