[Cite as *State v. Woody*, 2021-Ohio-860.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| LAKIM A. WOODY | : | Case No. 2019CA00175 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2019 CR 0732

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      March 18, 2021

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio44702-1413

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Ave., N.W.
Suite 808
Canton, Ohio 44702

*Baldwin, J.*

{¶1}    Appellant, Lakim A. Woody, appeals the decision of the Stark County Court of Common Pleas finding him guilty of  Rape, in violation of R.C. 2907.02 (A)(2), a felony of the first degree with a Firearm Specification (R.C. 2941.145);  Aggravated Robbery, in violation of  R.C. 2911.01(A)(1), a felony of the first degree and Kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the second degree with a Firearm Specification (R.C. 2941.145), and sentencing him to an indefinite  minimum prison term of sixteen years up to a maximum prison term of  twenty-one  years.  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}    J.C., the victim in this case, reported that she was raped by a man she later identified as appellant, Lakim A. Woody. She reported that Woody accosted her while she was walking, held her at gun point, took her cell phone, and forced her into an alley and raped her.

{¶3}    J.C. left her home in the morning for a fifteen-minute walk to pick up a medical prescription.  As she walked she noticed a man she did not recognize standing behind a pole, and, as she walked past the pole, this man blurted out "head or no." J.C. responded "fuck no" and continued on her walk.

{¶4}    J.C. walked past the man and soon felt a gun in her back and was ordered to keep walking. The man guided her down an alley to the last house and continued to hold her at gun point.   The man dropped his pants and ordered her to fellate him until he ejaculated in her mouth.  She spit the ejaculate on the ground and was told by the man to walk away and he would throw her cell phone so she could recover it.  She did as he asked, but he kept the cell phone.

{¶5} J.C. called the police from a nearby home and was taken to a hospital where she was interviewed and examined. Her face, hands and mouth were swabbed for DNA and the swabs were sent to the Bureau of Criminal Identification (BCI) for analysis. J.C. also provided a statement to the police regarding the time and place of the assault, as well as a description of her assailant.

{¶6} The Canton police inspected the location where J.C. claimed the offense occurred and they did discover footprints, apparently made by adults, but they were not useful for identification. The police did not find her cellphone, nor did they find any other evidence at the scene.

{¶7} An examiner at BCI discovered male DNA on the swabs taken from J.C.'s mouth, face and hands. The DNA was analyzed and matched to Woody's DNA profile in the Combined DNA Index System. Upon learning of the match, the Canton police asked J.C. to participate in a lineup identification and she made a positive identification of Woody. A warrant was issued for Woody's arrest and he was charged with Rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, with a Firearm Specification R.C. 2941.145; Aggravated Robbery in violation of R.C. 2911.01(A)(I)), a felony of the first degree; and one count of Kidnapping in violation of R.C. 2905.01(A)(2) and/or (A)(4), a felony of the second degree, with a Firearm Specification R.C. 2941.145.

{¶8} After Woody's arrest, the Canton Police Department obtained a DNA sample from him pursuant to a warrant and forwarded the sample to BCI for analysis and comparison to the DNA taken from J.C.

{¶9} Woody's case was presented to a jury beginning on October 7, 2019. During the trial, J.C. explained to the jury that she saw the gun that Woody brandished

and used to force her into an alley where he compelled her to perform oral sex until Woody ejaculated into her mouth. She acknowledged that had she called for help others may have heard her, but she feared that Woody would kill her if she screamed. She remembered having no difficulty identifying Woody in a photo lineup and confirmed her recognition of Woody as her assailant by identifying him in the courtroom.

{¶10} The state provided testimony of a registered nurse and a Canton police detective regarding the collection of DNA evidence from J.C. shortly after the assault and from Woody after his arrest. Appellee provided a complete chain of custody for those samples leading to BCI where the samples were examined and compared by a forensic scientist in the DNA section. After explaining her analysis to the jury, the BCI expert concluded that the DNA extracted from J.C.'s mouth contained DNA matching the sample taken from Woody. The expert concluded that Woody's profile was unique and that the chances of a coincidental match with that profile were significantly less than one in one trillion unrelated individuals.

{¶11} The jury returned a guilty verdict on all counts and Woody was sentenced to an indefinite term in prison of sixteen to twenty-one years. Woody filed an appeal and submitted five assignments of error:

{¶12} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED."

{¶13} "II. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

**{¶14}** "III. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL IN REGARD TO THE FIREARM SPECIFICATIONS BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE."

**{¶15}** "IV. THE TRIAL COURT ERRED IN IMPROPERLY INSTRUCTING THE JURY BY INCLUDING THE TERM "SEXUAL CONTACT" IN THE INSTRUCTIONS GIVEN TO JURY, OVER THE APPELLANT'S OBJECTION, IN REGARD TO THE OFFENSE OF KIDNAPPING."

**{¶16}** "V. THE APPELLANT'S CONSECUTIVE SENTENCES ARE NOT SUPPORTED BY THE RECORD AND ARE CONTRARY TO LAW AS THEY ARE ALLIED OFFENESE OF SIMILAR IMPORT."

### ANALYSIS

### I., II., III.

**{¶17}** The first three assignments of error, that the conviction was against the manifest weight of the evidence, that the state failed to present sufficient evidence to support the conviction and that the firearm specification was not supported by sufficient evidence all rely upon a review of the sufficiency and manifest weight of the evidence and will be addressed together.

**{¶18}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is described in *State v. Jen*ks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, where the Supreme

Court of Ohio held that: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶19} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *Thompkins, supra,* at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶20} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

{¶21} Woody argues that the case presented by the state lacked what he characterized as essential evidence and was further weakened by the victim's inconsistent testimony.  The missing evidence included:

**{¶22}** evidence of wet spots on the victim's pants to prove she was kneeling on the ground at the time of the assault;

**{¶23}** proof that Woody had a birthmark on his thigh as claimed by J.C. or owned boxer shorts matching the description given by J.C.;

**{¶24}** evidence of ejaculate from the ground at the scene of the assault;

**{¶25}** forensic evaluation of the victim's clothing;

**{¶26}** proof that the handgun that was used to control the victim was recovered or was operable;

**{¶27}** victim's inconsistent statements regarding the height of her assailant;

**{¶28}** the conflict between the victim's recollection of her actions at the photo lineup and the officer's recollection;

**{¶29}** GPS location of the victim's cellphone during or after the assault;

**{¶30}** independent laboratory confirmation of the DNA analysis.

**{¶31}** Woody also attacks the BCI expert's report, claiming her opinion was weakened by the admission that there were artifacts on eight of the twenty-one locations on the DNA sample.

**{¶32}** The issues raised by Woody in his brief are matters of credibility and conflicts in the evidence that juries are charged to resolve. The Supreme Court of Ohio recently confirmed that it is the "jury's responsibility to "fairly * * * resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" and that the "jury is the sole judge of a witness's credibility." (Citations omitted) *State v. Hundley,* 2020-Ohio-3775, *cert. denied,* U.S. No. 20-67092021 WL

666653, ¶ 59.  We have reviewed the record and find the jury did "fairly" resolve these conflicts.

{¶33}  J.C.'s testimony regarding the assault, from the time she first saw Woody until the end of the assault was not refuted by any other evidence, and the jury was free to believe her recitation of the facts.  Her testimony provided evidence on every element of each charge sufficient to support a finding of guilt beyond a reasonable doubt.

{¶34}  J.C.  testified that Woody brandished a firearm and used it to threatened her life if she failed to comply with his direction to enter an alley and engage in sexual activity with her against her will. (Kidnapping, R.C. 2905.01(A)(4)).  As he forced her toward the alley, he kept the firearm trained on her and took her cell phone from her, never to return it. (Aggravated Robbery, R.C. 2911.01(A)(1)). Once the victim and Woody were in the alley, she described how Woody compelled her, using the threat of the firearm, to engage in oral sex with him. (Rape, R.C. 2907.02(A)(2)).  Her testimony regarding Woody's brandishing and use of the firearm during the commission of the offenses also fulfills the requirements of the firearm specification included in the charges. (R.C. 2941.145(A)).  Finally, the victim positively identified Woody as her assailant.

{¶35}  The testimony of J.C. was sufficient, if believed by the jury, to support a finding of guilty beyond a reasonable doubt on all charges.

{¶36}  The presentation of the forensic expert testimony bolstered J.C.'s testimony regarding the identity of the perpetrator and his sexual assault.  The expert confidently confirmed that she found DNA on the swab of J.C.'s mouth, that the DNA was derived from semen and that the DNA profile was a match to the sample provided by Woody.

She confirmed that the chances of a coincidental match with the profile of another unrelated person was significantly less than one in one trillion.

**{¶37}** We find that "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶38}** Woody also contends that the appellee failed to prove operability of the firearm in support of his first three assignments regarding sufficiency of the evidence, manifest weight and the failure to grant the Crim.R. 29 motion.  J.C. did see the gun just before it was placed against her back and she positively identified it as a firearm during the trial.  Woody kept the gun trained on J.C. through the entire ordeal and J.C. confirmed that she complied with his demands out of fear that she would be shot.  We find that these facts provide sufficient circumstantial evidence regarding the operability of the firearm.

**{¶39}** "[T]he trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm" to show that the firearm was operable. R.C. .C. 2923.11(B)(2) As cited in State *v. Bolton,* 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 86.  The Supreme Court of Ohio addressed this issue in *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 where it held that "given our holdings in *Dixon* and *Murphy, supra*, it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable."  We are bound to follow the precedent in *Thompkins*, so we find that the actions of Woody and the testimony of J.C. provides sufficient evidence

to support a finding beyond a reasonable doubt that Woody brandished and used an operable firearm during the commission of the offenses.

**{¶40}** Woody also contends that the conviction was against the manifest weight of the evidence. After our review of the record and considering our resolution of the claim regarding insufficient evidence, we cannot find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered."

**{¶41}** Assignments of error One, Two and Three are denied.

## IV.

**{¶42}** In his fourth assignment of error, Woody claims the trial court erred by including the term "sexual contact" in its definition of sexual activity related to the charge of Kidnapping. Woody contends that this confused the jury and led them to rely on the definition of "sexual contact" to convict him of Rape, which requires proof of sexual conduct.

**{¶43}** The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review. *Estate of Hall v. Akron Gen. Med. Ctr.,* 125 Ohio St.3d 300, 2010–Ohio–1041, 927 N.E.2d 1112, ¶ 26. An inadequate instruction which misleads the jury constitutes reversible error. *Marshall v. Gibson,* 19 Ohio St.3d 10, 482 N.E.2d 583 (1985). Our standard of review when it is claimed improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights. *Lowder v. Domingo,* 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241 ¶ 40.

**{¶44}** Woody posits that the inclusion of sexual contact and sexual conduct when defining the term "sexual activity" with regard to the charge of Kidnapping confused the jury and led them to conclude that he may be convicted of Rape simply for committing sexual contact with J.C.

**{¶45}** The instruction provided by the court regarding the Kidnapping charge was a correct statement of the law, both in the substance of the charge and the definition of the term "sexual activity." Likewise, the instruction regarding the charge of Rape was a correct statement of the law, and provided the jury a clear distinction between the elements of that crime and the charge of Kidnapping.

**{¶46}** The trial court's instruction regarding Rape included the requirement that "you must find beyond a reasonable doubt that on or about March 22nd, 2019, and in Stark County, Ohio, the defendant engaged in sexual conduct with [J.C.]." and accurately defined sexual conduct as meaning "vaginal intercourse between a male and female, anal intercourse, fellatio, or cunnilingus between persons regardless of sex."

**{¶47}** The Aggravated Robbery charge was inserted between the Rape and Kidnapping charge, adding some emphasis to the separate nature of the acts. The relevant portion of the instructions regarding the Kidnapping charge required the jury to find that Woody "by force, threat, or deception did remove [J.C.] from the place where she was found and/or did restrain [J.C.] of her liberty for the purpose of facilitating the commission of a Rape or flight thereafter and/or for the purpose of engaging in sexual activity with [J.C.] against her will." The instruction included the statutory definition of sexual activity as meaning "sexual conduct or sexual contact, or both. Sexual conduct means vaginal intercourse between a male and female, anal intercourse, fellatio, or

cunnilingus between persons regardless of sex. Sexual contact means any touching of an erogenous zone of another."

**{¶48}** We find that the instructions read as a whole are not confusing or misleading and did not prejudice Woody's substantial rights. The charges clearly refer to separate offenses, and the definition of Kidnapping includes not only the reference to "sexual activity" but also "Rape" conveying to the jury that sexual activity is to be distinguished from Rape. The instruction for the charge of Kidnapping focuses on Woody's purpose for removing or restraining J.C., to Rape or engage in sexual activity, which is distinct from the Rape instruction which requires proof of sexual conduct with no reference to purpose. The instructions are legally correct, logically distinct and are not confusing.

**{¶49}** Finally, the record contains substantial evidence that Woody committed Rape, engaged in sexual contact and sexual conduct by compelling J.C. to engage in oral sex with him. Consequently, even if the instruction was erroneous, we would find it harmless beyond a reasonable doubt. *State v. Bleigh,* Delaware App. No. 09–CAA–03–0031, 2010–Ohio–1182, ¶ 119, citing *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, 144 L .Ed.2d 35.D

**{¶50}** The fourth assignment of error is denied.

## V.

**{¶51}** In his fifth assignment of error, Woody claims that the imposition of consecutive sentences is unlawful because the trial court did not impose a maximum sentence for the Rape charge, yet concluded that consecutive sentences were necessary to protect the public. He also argues that Aggravated Burglary is an allied offense of similar import and should be merged with the offenses of Rape and Kidnapping.

**{¶52}** Appellate review of an allied-offense question is de novo. *State v. Miku*, 5th Dist. No. 2017 CA 00057, 2018-Ohio-1584, ¶ 70, appeal not allowed,154 Ohio St.3d 1479, 2019-Ohio-173, 114 N.E.3d 1207 (2019), quoting *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

**{¶53}** Revised Code 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶54}** The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, ¶ 21. In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed us to look at the elements of the offenses in question and determine "whether it is possible to commit one offense *and* the other with the same conduct."

(Emphasis sic). *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

**{¶55}** *Johnson's* rationale has been described by the Court as "incomplete." *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Supreme Court of Ohio has further instructed us to ask three questions when a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶56}** Woody's contention that Aggravated Robbery is an allied offense of similar import and should be merged with the offenses of Rape and Kidnapping is not supported by the record. While Woody's offenses involved only one victim, the Aggravated Robbery was committed separately and with the motivation to prevent the use of the cellphone. The Aggravated Robbery required different conduct, a theft offense, and the commission of Aggravated Robbery alone will never result in a Rape or Kidnapping without additional action by the assailant. The trial court did not err by not merging the Aggravated Robbery charge with the Rape and Kidnapping charges.

**{¶57}** Woody next claims that the imposition of consecutive sentences is unlawful because the trial court did not impose a maximum sentence for the Rape charge, but concluded that consecutive sentences were necessary to protect the public. Our authority to modify or vacate the trial court's sentence is limited to those circumstances where we find clear and convincing evidence that "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant[or] [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a), (b). Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Silknitter*, 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7 quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, ¶ 1, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum,* at ¶ 22 quoting *Ledford.*

**{¶58}** Woody cites no legal authority for his conclusion that the trial court must impose a maximum sentence before it may order that sentences be served consecutively and we find no support in the Revised Code for his interpretation. We find that Woody has failed to provide clear and convincing evidence the record does not support trial court's findings or that the sentence is otherwise contrary to law, so we must deny the fifth assignment of error.

**{¶59}** The decision of the Stark County Court of Common Pleas is affirmed.


By: Baldwin, P.J.

Gwin, J. and

Wise, Earle, J. concur.