OPINION
{¶ 1} Appellant, Dallas Crothers, appeals a decision of the Clinton County Municipal Court denying his motion to suppress evidence of blood alcohol testing after he was charged with driving under the influence.
 {¶ 2} At 1:43 a.m. on May 12, 2002, Wilmington Police Officer Corey Pratt received dispatch information to be on the lookout for a green Cadillac with a specific license plate number. The dispatch was issued as a result of a 1-800-GRAB-DUI tip regarding possible intoxication of the driver. Officer Pratt identified the vehicle and observed it failing to timely respond to a green light. When the Cadillac began to move, it straddled between the north and southbound lanes for approximately 150 feet. Pratt attempted to pull the vehicle over, but it continued for approximately three blocks before pulling over. During the stop, Officer Pratt noticed signs of intoxication and asked appellant, the driver, to take field sobriety tests. Appellant refused to take the field sobriety tests and was arrested and taken to the Wilmington Police Station. After talking to his attorney, appellant refused to take a breath test.
 {¶ 3} Officer Pratt obtained a search warrant for a blood alcohol test. Appellant was transported to Clinton Memorial Hospital where a phlebotomist used a sealed specimen kit provided by the Wilmington Police Department to collect appellant's blood. The test results showed that appellant's blood alcohol level was .30.
 {¶ 4} Appellant was charged with driving under the influence pursuant to a Wilmington ordinance along with a charge for a "high test" violation, and several other charges related to the traffic stop. Appellant filed a motion to suppress evidence and the trial court held a hearing on issues regarding the motion. Appellant's motion, which involved various issues, including suppression of the blood alcohol test, was overruled. Appellant subsequently pled no contest to the charges, was found guilty and sentenced by the trial court.
 {¶ 5} Appellant now appeals the trial court's decision regarding suppression of the blood alcohol test. He raises the following single assignment of error for our review:
 {¶ 6} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE B.A.C. TEST AFTER THE STATE FAILED TO PROVE SUBSTANTIAL COMPLIANCE WITH CHAPTER 3701-53-05 OF THE OHIO ADMINISTRATIVE CODE (O.A.C.)."
 {¶ 7} When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. Statev. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 8} Appellant first contends that the trial court erred in finding that the state had a "fairly slight" burden to prove compliance with Chapter 3701-53-05 of the Ohio Administrative Code.
 {¶ 9} A motion to suppress must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. State v.Shindler, 70 Ohio St.3d 54, 1994-Ohio-452. Once a defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. State v. Plummer (1986),22 Ohio St.3d 292, 294. In driving under the influence cases, if a motion sufficiently raises an issue involving the applicable regulations, the state must then show substantial compliance with the regulation at issue. Id.
 {¶ 10} However, the burden to establish substantial compliance only extends to the level of specificity with which the defendant takes issue with the legality of the test. Statev. Johnson (2000), 137 Ohio App.3d 847, 852. Therefore, when a defendant's motion only raises issues in general terms, the state is only required to demonstrate compliance in general terms. Id. at 851. Specific evidence is not required unless the defendant raises a specific issue in his motion. Id.
 {¶ 11} As these rules relate to driving under the influence cases, a motion alleging the specific Ohio Administrative Code sections a defendant feels were violated sufficiently raises issues for a court's consideration. Shindler at 57. However, the state's burden to show compliance in regards to such a general allegation is slight, and requires only the amount of specificity as stated in the motion. Johnson at 851-852. Unless a motion raises a specific requirement of a regulation in detail, the state is not required to present specific evidence on that issue, but only need present general testimony that there was compliance with the requirements of the regulation at issue. Id. Once the state has established substantial compliance and created a presumption of admissibility, the burden then shifts to the defendant to rebut the presumption by demonstrating that he was prejudiced by anything less than substantial compliance. Statev. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372.
 {¶ 12} Turning to the facts of the case at bar, appellant contends that the trial court erred by assigning a "fairly slight" burden to the state to show substantial compliance with Chapter 3701-53-05. The only section of appellant's motion to suppress related to the administration of blood alcohol testing states, "[t]he individual administering the Defendant's test of alcohol did not conduct the test in accordance with the time limitation and regulations of the State of Ohio in R.C.4511.19(D) and the Ohio Department of Health governing such testing and/or analysis, as set forth in Chapter 3701-53-01 of the Ohio Administrative Code."
 {¶ 13} Appellant argues that because the motion stated the issue raised with sufficient particularity, the trial court erred in finding that the state's burden to show substantial compliance was "fairly slight." Appellant's contention evidences a misunderstanding and commingling of two separate concepts. First, according to Shindler, the trial court must determine whether the motion states the legal and factual bases it relies on with sufficient particularity to place the prosecutor and court on notice of the issues to be decided. Although the motion at issue is extremely general and does not cite to the specific Ohio Administrative Code section at issue, the motion is sufficient to put the state and court on notice that the defendant's bases for suppression include whether the blood alcohol test was conducted in accordance with the time limitation and regulations regarding such testing.
 {¶ 14} However, because the motion only alleges issues involving the blood alcohol test in general terms, the state was required only to present general testimony that the testing was performed according to the applicable regulations. Because appellant did not allege any specific area or item of the blood testing that was incorrectly performed, the state was not required to present specific testimony regarding every possible element of the testing. In other words, because the defendant only alleged that the requirements were not followed in general terms, the state was only required to establish in general terms that there was substantial compliance with the testing procedures.
 {¶ 15} The alcohol-testing regulations in Ohio Adm. Code3701-53-05 relate to blood testing, and state as follows:
 {¶ 16} "(A) All samples shall be collected in accordance with section 4511.19, or section 1547.11 of the Revised Code, as applicable.
 {¶ 17} "(B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.
 {¶ 18} "(C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.
 {¶ 19} "(D) The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be deposited into a clean glass or plastic screw top container which shall be capped, or collected according to the laboratory protocol as written in the laboratory procedure manual.
 {¶ 20} "(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:
 {¶ 21} "(1) Name of suspect;
 {¶ 22} "(2) Date and time of collection;
 {¶ 23} "(3) Name or initials of person collecting the sample; and
 {¶ 24} "(4) Name or initials of person sealing the sample.
 {¶ 25} "(F) While not in transit or under examination, all blood and urine specimens shall be refrigerated."
 {¶ 26} Thus, the blood-testing procedure in Ohio Adm. Code3701-53-05 requires the state to (1) use an aqueous solution of a nonvolatile antiseptic on the skin, (2) use a sterile dry needle to draw blood into a vacuum container with a solid anticoagulant, (3) seal the blood container in accordance with the appropriate procedure, and (4) refrigerate the blood specimen when it is not in transit or under examination. The purpose of these regulations is to ensure the accuracy of the alcohol-test results. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372; State v.Dickerson (1986), 25 Ohio St.3d 64, 65-66.
 {¶ 27} The phlebotomist in this case, Kiley Hollon, testified that she used a sealed kit brought to the hospital by the Wilmington Police Department that was specifically prepared for blood alcohol level testing. Hollon also testified that she followed hospital procedures and policies for drawing blood. She stated that she used a gray-topped tube with a chemical, sodium chloride, inside and a prep pad that did not contain alcohol. Hollon further testified that she used a sterile, dry needle attached to a little vacuum container to attach the needle to the tube and that the tube with the blood in it was labeled with appellant's name, her initials, the time, signed and dated. The officer also signed and dated the tube, then a seal was placed on the tube. On cross-examination, Hollon was asked, "Do you, yourself, have personal knowledge that there was any anticoagulant added to Mr. Crothers' blood?" She responded that she had no knowledge of anticoagulant, other than what was in the tube. She also testified that she used a prep pad that contained iodine because that was the pad contained in the kit supplied by the police, rather than the two types of swabs generally used by the hospital. This testimony was sufficient to establish substantial compliance with the regulations.
 {¶ 28} Hollon was also questioned regarding the chemical compound listed on the label of the gray collection tube. She was asked if she knew what "potassium oxalate sodium chloride" was. Defense counsel asked, "You don't know?" and Hollon responded, "Not exactly." On further questioning by the court and defense counsel, Hollon stated that the gray capped tubes used by the police and hospital all have an anticoagulant in them, but that she did not know what the specific chemical was.
 {¶ 29} Appellant argues that the state failed to prove an anticoagulant was present in the vacuum container when appellant's blood was drawn. Appellant contends that because Hollon was unable to establish precisely what the chemical on the label was, the presence of an anticoagulant was not established. We disagree. Appellant challenged the collection of blood only in general terms. The state met its burden by establishing through Hollon's testimony that an anticoagulant was in the tube. Hollon testified that the gray tubes are used for the purpose of blood alcohol testing because they contain an anticoagulant. No further testimony was required. If appellant desired to challenge the exact nature of the chemical present in the tube, he was required to do so specifically in his motion so that the state would be aware of the nature of his challenge and have the opportunity to be prepared with testimony to that effect.
 {¶ 30} Appellant also argues that the state did not show substantial compliance with the requirement that an "aqueous solution of non-volatile antiseptic" was used to cleanse the area where appellant's blood was drawn. He contends that Hollon did not testify specifically regarding the nonvolatile nature of the iodine and that she did not follow hospital procedure in the type of swab used. However, Hollon did testify that she used a prep pad specifically provided by the police department, that did not contain alcohol. We find that this meets the state's burden to show substantial compliance with the regulation that states an aqueous solution of a nonvolatile antiseptic should be used and "no alcohols are to be used as a skin antiseptic." Furthermore, appellant did not show that he was prejudiced by the use of iodine, rather than the two chemicals provided in the hospital's policy.
 {¶ 31} In conclusion, we find that the state established substantial compliance with the applicable regulations regarding blood alcohol testing, and that appellant failed to establish that he was prejudiced by any lack of strict compliance. Therefore, the trial court did not err in denying appellant's motion to suppress. Appellant's assignment of error is overruled.
 {¶ 32} The judgment is affirmed.
Judgment affirmed.
Walsh and Valen, JJ., concur.