[Cite as *State v. Bordeau*, 2023-Ohio-2040.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 22 CAA 08 0059 |
| LAYLAH E. BORDEAU | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Delaware County Court of
                             Common Pleas, Case No. 21 CR I 05 0309


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 20, 2023


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant

MELISSA A. SCHIFFEL                    APRIL F. CAMPBELL
Delaware County                        545 Metro Place South, Suite #100
Prosecuting Attorney                   Dublin, Ohio 43017

PAYTON ELIZABETH THOMPSON
Delaware County Assistant Prosecutor
145 N. Union Street, 3rd Floor
Delaware, Ohio 43015

*Hoffman, J.*

{¶1}   Defendant-appellant Laylah Bordeau appeals the judgment entered by the Delaware County Common Pleas Court convicting her following jury trial of four counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and four counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), and sentencing her to an aggregate term of incarceration of thirty-two to thirty-six years.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   At 7:54 p.m. on March 29, 2021, Appellant was driving at a high rate of speed in the leftmost northbound lane of I-71 in Delaware County, Ohio.  Appellant attempted to merge right, but a vehicle was in that lane.  Appellant then swerved sharply to the left.  Appellant's vehicle dipped into the ditch of the median, went airborne, traveled through the metal cable barriers which separated the northbound and southbound lanes, and crashed into a Toyota RAV4 which was traveling southbound.  The force of the crash sent the RAV4 airborne, where it crossed two lanes and struck a semi-truck.  After striking the semi, the RAV4 again crossed two lanes, rolling over several times before landing on its roof.  Within seconds, the RAV4 burst into flames.  All four occupants of the vehicle died as a result of the crash.

{¶3}   Appellant was pulled from her vehicle by witnesses to the crash.  Sergeant James King of the Ohio State Highway Patrol had a brief interaction with Appellant as she was treated by EMS at the scene.  Sgt. King noticed Appellant's eyes were bloodshot and glassy, but did not observe slurred speech or an odor of alcohol.  Appellant stated she blacked out and did not recall anything about the crash.

{¶4} Appellant was taken to Grant Medical Center for treatment. While still at the scene, Sgt. King received video footage of the crash obtained from Ohio Department of Transportation cameras placed along the highway. Several witnesses described Appellant's driving before the accident to include traveling at a high rate of speed, swerving, and driving outside marked lanes.

{¶5} Sgt. King obtained a warrant to test Appellant's blood, which was sent electronically to Trooper Darius Patterson, who was waiting at the hospital. The warrant was executed using an Ohio State Highway Patrol collection kit, with a registered nurse at the hospital performing the blood draw. The blood was tested by both the Ohio State Highway Patrol Laboratory and by NMS Labs, a private lab which holds permits from the Ohio Department of Health. Testing at both labs revealed a high concentration of fentanyl and norfentanyl, a metabolite produced when the body breaks down fentanyl, in Appellant's blood sample. NMS labs has the ability to test for more drugs than the Ohio State Highway Patrol Laboratory, and additionally found parafluorofentanyl, aminoclonazolam, and 4-ANPP in Appellant's blood sample.

{¶6} Appellant was indicted by the Delaware County Grand Jury with four counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), felonies of the second degree, and four counts of aggravated vehicle homicide in violation of R.C. 2903.06(A)(2)(a), felonies of the third degree.

{¶7} Appellant moved to suppress the results of the blood tests, arguing the testing was not conducted in substantial compliance with Ohio Department of Health regulations. After a two-day evidentiary hearing, the trial court overruled the motion to suppress.

**{¶8}** The State filed a motion in limine and objection to the expert testimony of Dr. Jimmie Valentine, requesting a hearing on the admissibility of Dr. Valentine's testimony pursuant to *Daubert v. Merrill Dow Pharmaceutical, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). After holding a hearing, the trial court granted the motion in part, and overruled the motion in part. The trial court held Dr. Valentine's testimony did not meet the requirements of Evid. R. 702(B) and (C) with respect to his opinion Appellant suffered a seizure at the time of the crash. However, the trial court concluded Dr. Valentine could render an expert opinion on the effects of ingesting fentanyl, how the ingestion of drugs might present, and how the ingestion of drugs might impair a person's ability to drive.

**{¶9}** The case proceeded to jury trial. Appellant testified at trial she suffered a seizure at work on February 12, 2021. She admitted to using fentanyl and Xanax on a regular basis, without a prescription for either drug. She testified she switched to fentanyl from oxycodone in 2017, and her use continued to grow as she developed a high tolerance to fentanyl. She admitted she took her normal amount of fentanyl on the day of the accident. She testified while driving on I-71 to a friend's house, she began to experience the same feeling she had prior to experiencing a seizure at work the month before, and everything went black. She testified she had a seizure at the hospital after the accident and another at the jail after her arrest. She testified she did not believe the later seizures were caused by drug withdrawal.

**{¶10}** The jury found Appellant guilty of all eight counts. The parties agreed counts five through eight would merge into counts one through four, and the State elected to have Appellant sentenced on counts one through four, the second degree felonies.

The trial court sentenced Appellant to eight to twelve years incarceration on count one and to eight years incarceration each on counts two, three, and four, to be served consecutively, for an aggregate term of thirty-two to thirty-six years incarceration.  It is from the July 29, 2022 judgment of the trial court Appellant prosecutes her appeal, assigning as error:


I. THE TRIAL COURT SHOULD HAVE GRANTED BORDEAU'S MOTION TO SUPPRESS HER BLOOD TEST RESULTS, BECAUSE BORDEAU'S MOTION SUFFICIENTLY RAISED ALL THE ISSUES TO BE DECIDED SUCH THAT THE STATE'S BURDEN WAS NOT SLIGHT. INSTEAD, THE STATE HAD TO DEMONSTRATE SUBSTANTIAL COMPLIANCE.

II. THE TRIAL COURT SHOULD HAVE GRANTED BORDEAU'S MOTION TO SUPPRESS:  BECAUSE THE BLOOD WAS DRAWN BY A HEALTH CARE PROFESSIONAL BUT NOT ANALYZED BY ONE, AND THE STATUTES AND REGULATIONS AT ISSUE WERE NOT SUBSTANTIALLY COMPLIED WITH, THE BLOOD-TEST RESULTS WAS INADMISSIBLE AT TRIAL EVEN WITH AN EXPERT.

III. TRIAL COUNSEL WAS INEFFECTIVE IN A MANNER THAT PREJUDICED BORDEAU BY STIPULATING TO THE ADMISSION OF THE BLOOD TEST RESULTS WITH EXPERT TESTIMONY WHEN THOSE RESULTS COULD NOT HAVE OTHERWISE BEEN ADMITTED.

IV. THE COURT COMMITTED PREJUDICIAL ERROR BY NOT INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSE OF THE THIRD-DEGREE FELONY OFFENSES OF VEHICULAR MANSLAUGHTER, FOR BORDEAU'S AGGRAVATED VEHICULAR HOMICIDE OFFENSES (COUNTS ONE THROUGH FOUR).

V. THE TRIAL COURT ABUSED ITS DISCRETION IN PRECLUDING DR. VALENTINE FROM TESTIFYING WITH RESPECT TO SEIZURES UNDER THE DAUBERT STANDARD.

I.

**{¶11}** In her first assignment of error, Appellant argues the trial court erred in failing to apply a substantial compliance standard in considering her motion to suppress her blood test results for lack of compliance with Ohio Department of Health regulations.

**{¶12}** The Ohio Supreme Court has held rigid compliance with ODH regulations is not required, as such compliance is not always humanly or realistically possible. *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902 (1986). Rather, if the State shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol and drug tests results are admissible. *Id.*

**{¶13}** However, the burden to establish substantial compliance only extends to the level with which the defendant takes issue with the legality of the test. *State v. Johnson*, 137 Ohio App.3d 847, 851, 739 N.E.2d 1249 (2000); *State v. Crothers*, 12th Dist. Clinton No. CA2003–08–020, 2004–Ohio–2299, ¶ 10. When the defendant's motion to suppress merely raises a generalized claim of inadmissibility and identifies the

section(s) of the Administrative Code implicated in the claim, the burden on the State is slight. *State v. Bissaillon*, 2nd Dist. Greene No. 06–CA–130, 2007–Ohio 2349, ¶ 12; *State v. Williams*, Montgomery App. No. 16554, unreported, 1998 WL 214595 (Apr. 24, 1998); *State v. Embry,* 12th Dist. Warren No. CA2003–11–110, 2004–Ohio–6324, ¶ 24 (simply reiterating Administrative Code provisions creates a burden on the State to respond only in general to the issues raised). The State is only required to present general testimony there was substantial compliance with the requirements of the regulations; specific evidence is not required unless the defendant raises a specific issue in the motion to suppress. *Id.*; *Bissaillon*, *supra*, 2007–Ohio–2349 at ¶ 12; *State v. Crotty*, 12th Dist. Warren No. CA2004–05–051, 2005–Ohio 2923, at ¶ 19.

**{¶14}** In the instant case, Appellant's motion set forth eighteen grounds for suppression of her blood test results, in general terms, by simply reiterating the Administrative Code provisions she alleged were violated. The motion did not set forth a factual basis for any of these eighteen claims of violation. However, after the presentation of evidence at a two-day suppression hearing, the trial court allowed Appellant to raise issues with specificity. Appellant filed a post-hearing brief raising seven grounds for suppression with specificity. The trial court, in a lengthy judgment entry filed January 6, 2022, addressed each of these grounds pursuant to the substantial compliance standard. We find the trial court did not err in addressing only those grounds specifically raised in the post-hearing brief pursuant to the substantial compliance standard.

**{¶15}** Further, in her second assignment of error, Appellant argues the trial court erred in overruling her motion to suppress for four reasons: her blood sample was drawn outside the three-hour time limitation, the Ohio State Highway Patrol lab did not conduct

the blood test in accordance with the procedure manual and performed the test on a machine which was not functioning properly, the State failed to prove the blood sample was refrigerated while not in transit or under examination, and the State failed to prove the technicians at the NMS laboratory had the necessary permits. The trial court addressed each of these issues pursuant to the substantial compliance standard except for the time limitation. Appellant did not raise the issue of the time delay in her post-hearing brief, and the Ohio Supreme Court has held even if the time limitations set forth in R.C. 4511.19(D) are not complied with, test results are admissible in a prosecution for aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) if the administrative requirements are otherwise substantially complied with and expert testimony is offered at trial. *State v. Hassle*r, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶ 19. Appellant has therefore not demonstrated any prejudice from the trial court's consideration of only the seven errors she presented in her post-hearing brief under a substantial compliance, as she makes no argument on appeal the State failed to substantially comply with any of the remaining eleven administrative regulations set forth in her initial motion.

{¶16} The first assignment of error is overruled.

II.

{¶17} In her second assignment of error, Appellant argues the trial court erred in overruling her motion to suppress because her blood was withdrawn outside the three-hour time limitation set forth in R.C. 4511.19(D), the person who analyzed her sample at the Ohio State Highway Patrol lab should have taken the testing machine out of service because it was not functioning properly, the State failed to demonstrate the sample was

refrigerated at all times not in transit or under examination, and the technicians at the NMS lab did not have the required certification.

{¶18}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review.  *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶19}  **Procedure manual/proper functioning of machine:**  Appellant argues the machine was not functioning properly during an earlier test, and rather than take the

machine out of service as required by the lab's procedure manual, the technician changed the column and proceeded to test the sample.

{¶20} OAC 3701-53-06(D)(6) provides a complete and timely procedure manual must be followed by laboratory personnel.  The lab manual in question provides:

> Instrumentation shall be maintained in good working order.  Broken equipment or any device that is functioning improperly shall be designated as "out of service" until repaired and determined to be in proper working order by running QC materials and achieving results that meet the acceptance criteria for the material used.

{¶21} Kimberly Blevins testified when she attempted to test the blood sample on April 9, 2021, a retention time shift with the internal standard occurred, and she could not obtain an admissible result.  Ms. Blevins admitted this was a "big problem."  Supp. Tr. 169.  However, she did not run the sample at that time because of the error.  She admitted she did not take the machine out of service, but testified she did not need to take the machine out of service.  She testified no repairs were needed because the retention time shift was caused by the particular column used, and after she replaced the column, the machine was in proper working order and functioning properly.  She testified she ran the QC materials and received acceptable results. The sample from which results were collected was not run until April 14, 2021, after the machine was once again in working order.  We find the trial court did not err in concluding the State demonstrated substantial compliance.

{¶22} **Refrigeration of sample:** Appellant argued in her motion the State failed to prove the blood sample was refrigerated at the Ohio State Highway Patrol Crime Lab between the dates of March 31, 2021 and April 5, 2021.

{¶23} Ms. Blevins testified Appellant's blood sample was received by the lab on March 31, 2021. She testified when samples are received, they are immediately placed in the "pre log-in receiving refrigerator." From the "pre log-in receiving refrigerator," samples are next moved to the "evidence receiving refrigerator."

{¶24} State's Exhibit 1 from the suppression hearing includes a document from the lab titled Crime Laboratory Evidence Receipt. This document demonstrates the sample was placed in an "evidence receiving refrigerator (pre log-in)" on the same date. The Internal Chain of Custody Report, also included in State's Exhibit 1, demonstrates the sample was next moved on April 5, 2021, from the "evidence receiving refrigerator (pre log-in)" to the "evidence receiving refrigerator." As noted by the trial court, this procedure of moving the sample from one refrigerator upon receipt to another before examination is consistent with Ms. Blevins's testimony concerning the refrigeration process in the lab. We find the trial court did not err in finding there was sufficient evidence to demonstrate the sample was refrigerated between March 31, 2021 and April 5, 2021.

{¶25} **Proper certifications of NMS lab personnel:** As to the blood testing at NMS Labs, Appellant argue the technicians did not have proper permits in violation OAC 3701-53-07(B), which at the time of her blood test provided as follows:

Blood, urine, and other bodily substance tests for alcohol shall be performed in a laboratory by an individual who has a laboratory director's permit or, under his or her general direction, by an individual who has a laboratory technician's permit. General direction does not mean that the laboratory director must be physically present during the performance of the test. Laboratory personnel shall not perform a technique or method of analysis that is not listed on the laboratory director's permit.

{¶26} It was uncontested at the hearing that several of the employees at NMS labs who were involved with the testing process did not have permits, specifically Donna Papsun who reviews toxicology reports but is not involved in testing, Callie Valtierra and Helena Lippay who transported Appellant's sample but did not test or manipulate the sample in any way, and Joseph Homan who reviewed the test results but was not involved in testing. However, Jeanna Walock from the Ohio Department of Health testified a permit is required for employees who conduct testing. Supp. Tr. (II) p. 61. Because Papsun, Valtierra, Lippay and Homan did not conduct testing, we find the trial court did not err in finding they were not required to have permits.

{¶27} **Timing of sample:** Appellant argues the trial court should have suppressed the results of her blood test because the sample was withdrawn more than three hours after the accident, in violation of R.C. 4511.19(D). However, as discussed earlier in this opinion, the test results are not rendered inadmissible in a prosecution for aggravated vehicular homicide for violation of the three-hour time limitation set forth in the statute, if the State otherwise substantially complied with testing regulations and

expert testimony is presented. *Hassler, supra,* at ¶19. The trial court found the State substantially complied with testing regulations, and we have found no error in the trial court's conclusion. The State presented expert testimony at trial explaining the results, accounting for the delay in drawing Appellant's blood and for a dose of fentanyl given at the hospital. Tr. 808-814. We find the trial court did not err in failing to suppress the blood results based on timing of the blood draw.

{¶28} The second assignment of error is overruled.

III.

{¶29} Appellant argues her trial counsel was ineffective for stipulating to the admission of the blood test results with expert testimony.

{¶30} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶31} Appellant does not cite to a place in the record where her counsel stipulated to admission of the blood test results, and we find the record does not support Appellant's assertion her trial counsel stipulated to admission of the blood results. Rather, counsel

strenuously argued through two suppression hearings and a post-hearing brief the results should be suppressed.

**{¶32}** Further, Appellant has not demonstrated a reasonable probability of a change in the outcome of the proceedings, as we have found no error in the trial court's judgment overruling her motion to suppress.

**{¶33}** The third assignment of error is overruled.

IV.

**{¶34}** In her fourth assignment of error, Appellant argues the trial court erred in failing to instruct the jury on vehicular manslaughter as a lesser-included offense of aggravated vehicular homicide, as charged in counts one through four of the indictment.

**{¶35}** A jury charge on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser or inferior offense. *See, e.g., State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to the defendant. *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included offense. *State v. Shane*, 63 Ohio St.3d at 632–633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006–Ohio–791 at ¶ 134.

**{¶36}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury

instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Miku*, 5th Dist. Stark No. 2017 CA 00057, 2018-Ohio-1584, 111 N.E.3d 558, ¶ 53.

{¶37} In counts one through four of the indictment, Appellant was charged with aggravated vehicular homicide, a second degree felony, in violation of R.C. 2903.06(A)(1)(a), which provides:

>        (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
>
>        (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]

{¶38} R.C. 4511.19 prohibits operating a motor vehicle while under the influence of alcohol or a drug of abuse.

{¶39} In counts five through eight, Appellant was charged with aggravated vehicular homicide as a third degree felony in violation of R.C. 2903.06(A)(2)(a), which provides:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

(2) In one of the following ways:

(a) Recklessly[.]

**{¶40}** As to counts one through four, Appellant requested the jury be instructed on vehicular manslaughter, a third degree felony, as a lesser-included or inferior-degree offense of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(4):

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

**{¶41}** Appellant argues the State presented evidence she committed a number of minor misdemeanors while driving, including several which proximately caused the accident, and thus was entitled to the instruction. However, because of the manner in which this case was indicted, the jury already had before it a lesser-included offense of aggravated vehicular homicide as a third degree felony. Appellant testified she blacked out, which would provide a complete defense to the crimes charged. She also presented evidence she had developed a tolerance to fentanyl, and thus the accident was not the proximate result of her drug use. In overruling Appellant's motion, the trial court stated:

The issue of vehicular manslaughter was the requested lesser included. It is a lesser included, it appears, in counts one through four of the indictment here. But I believe counts five through eight are already being provided as a lesser charge to one through four. I think those are sufficient.

As to counts five through eight, I find that the evidence is not such that a reasonable jury would acquit on counts five through eight and convict on the lesser included. And as to the issue of blackout, that is an all or nothing. It's a complete defense. So that would bar conviction on any count, whether it's in the indictment or the lesser included. So I've concluded I'm not going to give the request on the lesser included.

**{¶42}** Tr. 1198.

{¶43} We agree with the reasoning of the trial court. The jury was instructed on a lesser-included offense to each of counts one through four pursuant to the indictment. If the jury rejected Appellant's claim she blacked out but believed her evidence fentanyl did not affect her driving, the jury had before it the option to instead convict Appellant of a lesser-included offense, of the same degree as the lesser-included offense instruction requested by Appellant. From the video evidence and the testimony of witnesses to Appellant's driving up to and including the point of the accident, the evidence does not support a finding the accident was caused by simple commission of minor misdemeanors. Either the accident occurred because Appellant was under the influence of fentanyl, because she had a seizure and blacked out, or because she was driving recklessly. We find the trial court did not abuse its discretion in failing to give the requested instruction, as the evidence did not reasonably support conviction of the lesser offense and acquittal of the greater when the jury had before it a lesser-included offense of the same degree as the requested instruction.

{¶44} The fourth assignment of error is overruled.

V.

{¶45} In her fifth assignment of error, Appellant argues the trial court abused its discretion in excluding the expert testimony of Dr. Jimmie Valentine she suffered a seizure at the time of the accident.

{¶46} We apply an abuse-of-discretion standard in reviewing a trial court's decision to admit or exclude expert testimony. *State v. Bracone,* 5th Dist. Tuscarawas No. 2013 AP 11 0046, 2014–Ohio–4058, 19 N.E.3d 585, ¶ 84, *citing Gen. Elec. Co. v.*

*Joiner*, 522 U.S. 136, 144–146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *State v. Williams*, 4 Ohio St.3d 53, 58, 446 N.E.2d 444 (1983).

**{¶47}** Pursuant to *Daubert v. Merrill Dow Pharmaceutical, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the trial judge must perform a "gate-keeping" role to ensure expert testimony is sufficiently relevant and reliable to justify its submission to the trier of fact. *State v. Butler*, 5th Dist. Stark No. 2013CA00053, 2013–Ohio–4451, ¶ 17. In general terms, the reliability of an expert's opinion depends upon (1) the validity of the underlying theory, (2) the validity of the technique used to apply that theory, and (3) the proper application of the technique on a particular occasion. *Id.*

**{¶48}** In performing its "gate-keeping function," the trial court's starting point should be Evid.R. 702, which provides a witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory; and

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶49}** The focus of a *Daubert* hearing is the reliability of the potential evidence. The hearing does not usurp the role of the finder of fact at trial. "A court resolving a reliability question should consider the 'principles and methods' the expert used 'in reaching his or her conclusions, rather than trying to determine whether the conclusions themselves are correct or credible.' " *State v. Nemeth*, 82 Ohio St.3d 202, 210, 1998–Ohio–376, 694 N.E.2d 1332; *see also, Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735, paragraph one of the syllabus. As the *Daubert* court stated, in assessing reliability, '[t]he focus * * * must [generally] be * * * on principles and methodology, not on the conclusions that they generate." *Daubert, supra,* 509 U.S. at 595.

**{¶50}** Following the *Daubert* hearing in the instant case, the trial court found Dr. Valentine's testimony did not meet the requirements of Evid. R. 702(B) and (C) with regards to testimony Appellant suffered a seizure at the time of the accident. We agree.

**{¶51}** Dr. Valentine has a PhD in medicinal chemistry and has taught anti-seizure drugs in medical schools. He testified he had to understand seizures in order to understand how anti-seizure drugs work, and had produced seizures in laboratory mice

in order to use drugs to treat seizures. However, Dr. Valentine admitted at the hearing he did not teach the diagnosis of seizure disorders, and was not licensed to diagnose a seizure. We find the trial court did not abuse its discretion in finding Dr. Valentine did not qualify as an expert in determining whether Appellant had a seizure at the time of the accident, which is in effect a diagnosis of a seizure.

{¶52} We further find the trial court did not abuse its discretion in finding Dr. Valentine's opinion was not based on scientific, technical, or specialized information. Dr. Valentine's opinion was the result of his review of some documentation of Appellant's medical records from before and after the crash, employment records, a jail surveillance video, and one video of the crash from a substantial distance away. He did not meet with Appellant, examine Appellant, or conduct testing of any kind. His opinion she suffered a seizure was based in part on the lack of 911 calls prior to the crash reporting the possibility of an intoxicated driver, rather than on any scientific evidence. As noted by the trial court in its judgment entry granting the State's motion in part, Dr. Valentine's opinion was not based on reliable methodology or principles, but on "nebulous methodology," presenting "too great an analytical gap between the information relied upon and the opinion rendered." Judgment entry, July 5, 2022.

**{¶53}**  The fifth assignment of error is overruled.

**{¶54}**  The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

King, J. concur