[Cite as *State v. Siler*, 2026-Ohio-130.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>GERALD SILER<br><br>    Defendant – Appellant | Case No. 25 CAA 07 0053<br><br>Opinion And Judgment Entry<br><br>Appeal from the Delaware County Court of Common Pleas, Case No. 24 CR I 10 0603<br><br>Judgment:  Affirmed<br><br>Date of Judgment Entry:January 15, 2026 |

**BEFORE:**  CRAIG R. BALDWIN, P.J., ROBERT G. MONTGOMERY, J., KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** KATE MUNGER for Plaintiff-Appellee; APRIL F. CAMPBELL for Defendant-Appellant

OPINION

*Popham, J.*

{¶1}    Defendant-appellant Gerald Siler ("Siler") appeals from his conviction and sentence following a jury trial in the Delaware County Court of Common Pleas.  For the reasons noted below, we affirm.

**Facts and Procedural History**

{¶2}    On October 17, 2024, the Delaware County Grand Jury indicted Siler on two counts of operating a vehicle under the influence of alcohol or drugs ("OVI"), both felonies of the fourth degree. One count alleged a violation of R.C. 4511.19(A)(1)(a) and (G)(1)(d), asserting that Siler operated a vehicle while under the influence after three prior

OVI convictions. The second count alleged a violation of R.C. 4511.19(A)(2)(a), (A)(2)(b), and (G)(1)(d), asserting that Siler refused to submit to a chemical test within ten years of a prior OVI offense.

{¶3} The evidence presented at trial established the following.

{¶4} On April 13, 2024, between 10:00 p.m. and 11:00 p.m., Teresa Garrett observed a vehicle in a cornfield across from her residence on State Route 229 in Ashley, Delaware County, Ohio[1]. *1T. at 149-150*. The vehicle was several car lengths off the roadway, its lights were illuminated, and an individual appeared to be inside. *Id.* Garrett testified that she reported the vehicle to law enforcement using the non-emergency line. *Id. at 151.*

{¶5} Sergeant Darius Patterson of the Ohio State Highway Patrol testified that, at approximately 10:30 p.m., he was dispatched to a reported single-vehicle crash on State Route 229 near Strine Road. *1T. at 158-159*. Dispatch advised that the vehicle had left the roadway and that the driver might be intoxicated. *Id.* Sergeant Patterson testified that he arrived at the scene at approximately 10:55 p.m. and observed a vehicle in a muddy field and Siler standing outside, removing items from the vehicle. *1T. at 160*. The encounter was recorded on Sergeant Patterson's body-worn camera. *State's Exhibit 1*.

{¶6} Siler told Sergeant Patterson that he had been texting while driving. *1T. at 161.* Sergeant Patterson detected a strong odor of alcohol emanating from Siler, observed glassy and bloodshot eyes, and noted that Siler briefly lost his balance while attempting to remove mud from his shoes. *1T. at 168-172*. Sergeant Patterson testified that Siler made inconsistent statements regarding his direction of travel, destination, and

---

[1] For clarity, the transcript of Siler's jury trial will be referred to as "__T.__" signifying the volume and page number.

an alleged friend who was coming to assist. *1T. at 173*. Sergeant Patterson further testified that Siler believed he was on Route 29 rather than Route 229.

{¶7} In light of these observations, Sergeant Patterson requested that Siler perform field sobriety tests. Siler refused. *1T. at 172*. Based on the totality of the circumstances, Sergeant Patterson placed Siler under arrest. *Id. at 174*.

{¶8} A search of a bag that Siler acknowledged belonged to him revealed an open container of a "BuzzBall Cocktail" containing a small amount of liquid. *1T. at 175*. A tow truck was summoned to remove the vehicle from the scene.

{¶9} Sergeant Patterson advised Siler of the consequences of submitting to or refusing a breath test by reading the BMV-2255 form in the presence of the tow truck driver. *1T. at 176*. Siler refused to sign the form, and Sergeant Patterson marked the refusal. After completing the crash report, Sergeant Patterson transported Siler to the Highway Patrol Post. *Id. at 178.*

{¶10} Sergeant Patterson testified that, at the post, Siler refused to submit to a breath test. *1T. at 186-187*. Sergeant Patterson then sought and obtained a warrant authorizing a blood draw based on the indicators of impairment observed at the scene. *Id. at 187*. Sergeant Patterson transported Siler to Grady Memorial Hospital to execute the warrant.

{¶11} Despite the existence of a warrant, Siler resisted the blood draw. *1T. at 190-191*. Dasha Semenchuk, a phlebotomist, collected the blood sample using an Ohio State Highway Patrol-issued kit. *1T. at 233-234*. Semenchuk testified that she documented the collection at 3:08 a.m. and transferred custody of the sample to Sergeant Patterson at

3:12 a.m. *1T. at 195, 234; State's Exhibit 12.* Semenchuk testified that she could not recall whether she inverted the sample after collection. *1T. at 237-238.*

{¶12} Sergeant Patterson transported the sealed specimen to the Franklin County Post of the Ohio State Highway Patrol, completed the required documentation, and mailed the sample to the Ohio State Highway Patrol Crime Lab using first-class tracked mail at approximately 6:10 a.m. on April 14, 2024. *1T. at 195.* The Ohio State Highway Patrol Crime Lab received the sealed kit on April 16, 2024, at 12:42 p.m. *2T. at 265-266.* The sample was in the analyst's possession for testing by April 19, 2024. *Id.*

{¶13} Latisha Pipes, a criminalist with the Ohio State Highway Patrol Crime Lab, testified that she performed the toxicological analysis of Siler's blood sample. The results reflected a blood alcohol concentration of 0.135 grams per one hundred milliliters of whole blood at the time of the draw, plus or minus 0.009 grams. *2T. at 266.*

{¶14} The State also presented expert testimony from Robert G. Topmiller of the Hamilton County Coroner's Office[2]. *2T. at 317.* Topmiller prepared a report admitted as State's Exhibit 15. *Id. at 331.* In forming his opinion, Topmiller assumed that alcohol absorption had ceased by 10:28 p.m. and that Siler consumed no alcohol after 10:48 p.m. 2T. at 338. Based on those assumptions, Topmiller opined that Siler's blood alcohol concentration at the time of dispatch was approximately 0.26 grams per one hundred milliliters of blood. *2T. at 341.*

{¶15} Topmiller further testified that, at this level of intoxication, Siler would have been incapable of safely operating a motor vehicle. *2T. at 344-345.* He explained that such impairment would manifest as disorientation, impaired visual processing, delayed

---

[2] Topmiller was not testifying in his official capacity, but rather, as a paid expert witness. 2T. at 346-347.

reaction times, diminished decision-making, and reduced judgment and vehicle control. *Id. at 342-345.*

{¶16}  The defense presented no evidence. The jury found Siler guilty on both counts. At the sentencing hearing on June 13, 2024, the trial court merged the offenses and, on the count alleging refusal to submit to a chemical test, imposed a 16-month prison term, a three-year driver's license suspension, and a fine.

**Assignment of Error**

{¶17}  Siler raises one assignment of error,

{¶18}  "I. TRIAL COUNSEL WAS PREJUDICIALLY INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS: BECAUSE THE BLOOD WAS DRAWN BY A HEALTH CARE PROFESSIONAL BUT NOT ANALYZED BY ONE, AND THE STATUTES AND REGULATIONS AT ISSUE WERE NOT SUBSTANTIALLY COMPLIED WITH, THE BLOOD-TEST RESULTS WERE INADMISSIBLE AT TRIAL EVEN WITH AN EXPERT."

I.

{¶19}  In his sole assignment of error, Siler contends that he was denied the effective assistance of trial counsel because counsel failed to file a motion to suppress the blood-alcohol test results and related testimony.  We disagree.

**Standard Governing Ineffective Assistance Claims**

{¶20}  To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). The defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation, and (2) counsel's deficient performance

prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *Id.* A failure to establish either prong is fatal to the claim. *Strickland* at 697; *State v. Madrigal*, 87 Ohio St.3d 378 (2000).

{¶21} A trial attorney's decision not to file a motion to suppress does not, standing alone, constitute ineffective assistance. *Madrigal*, 87 Ohio St.3d at 389; *State v. Toure*, 2023-Ohio-2559, ¶ 35 (5th Dist.); *State v. Ortiz*, 2016-Ohio-354, ¶ 56 (5th Dist.). Counsel may be found ineffective only where the record demonstrates that the motion would have been granted and that there is a reasonable probability the outcome of the proceedings would have been different. *State v. Lavelle*, 2008-Ohio-3119, ¶ 47 (5th Dist.); *State v. Cheatam*, 2007-Ohio-3009, ¶ 86 (5th Dist.); *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *State v. Santana*, 90 Ohio St.3d 513 (2001).

{¶22} Accordingly, resolution of this assignment of error turns on whether a motion to suppress the blood-alcohol evidence would have been meritorious.

**Governing Statutes and Administrative Regulations**

{¶23} R.C. 4511.19 governs the admissibility of chemical-test evidence in prosecutions for operating a vehicle under the influence. As relevant here, R.C. 4511.19(D)(1)(b) permits the admission of blood-alcohol evidence obtained pursuant to a valid search warrant, provided the sample is withdrawn and analyzed in accordance with methods approved by the Director of Health. The statute also limits who may withdraw blood and requires that analysis be conducted by an individual holding a valid permit issued under R.C. 3701.143. The blood must also be withdrawn within three hours of the time of the alleged violation. R.C. 4511.19 (D)(1)(b). However, the Supreme Court of Ohio has held that "[a] blood sample taken outside the time frame set out in R C.

4511.19(D) is admissible to prove that a person was under the influence of alcohol as proscribed by R C. 4511.19(A)(1)(a) in the prosecution for a violation of R.C. 2903.06 [aggravated vehicular homicide], provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with *and* expert testimony is offered." *State v. Hassler,* 2007-Ohio-4947, syllabus (emphasis added).

{¶24} Pursuant to these statutory directives, the Director of Health promulgated Ohio Adm.Code 3701-53-06, which sets forth standards governing the collection, sealing, handling, and storage of blood samples.

**Substantial Compliance Standard**

{¶25} The Supreme Court of Ohio has consistently held that strict compliance with the Department of Health regulations is not required. *State v. Plummer*, 22 Ohio St.3d 292, 294 (1986). Rather, the State must demonstrate substantial compliance, and test results are admissible absent prejudice to the defendant. *Id.*

{¶26} The State's burden extends only to those regulatory provisions specifically placed at issue by the defendant. *State v. Johnson*, 137 Ohio App.3d 847, 851 (12th Dist. 2000); *State v. Crothers*, 2004-Ohio-2299, ¶ 10 (12th Dist.). When a defendant raises only generalized claims of noncompliance, the State may satisfy its burden through general testimony establishing substantial compliance. *State v. Bissaillon*, 2007-Ohio-2349, ¶ 12 (2d Dist.); *State v. Embry*, 2004-Ohio-6324, ¶ 24 (12th Dist.). This Court has reaffirmed these principles. *State v. Bordeau*, 2023-Ohio-2040 (5th Dist.); *State v. Benefield*, 2025-Ohio-1116 (5th Dist.).

**Application to the Present Case**

{¶27} It is undisputed that Siler's blood was drawn by Dasha Semenchuk, a licensed phlebotomist employed by Grant Medical Center, a statutorily defined health-care provider. *See* R.C. 2317.02. It is likewise undisputed that the blood sample was analyzed by the Ohio State Highway Patrol Crime Lab. Further, it is undisputed that the sample was withdrawn outside the three-hour time limitation. Accordingly, the State was required to demonstrate substantial compliance with the applicable administrative regulations *and* to present expert testimony. *State v. Hassler,* 2007-Ohio-4947, syllabus

{¶28} The record reflects such compliance. Criminalist Latisha Pipes, a qualified analyst, testified that she performed the toxicological analysis of Siler's blood sample and determined his blood-alcohol concentration to be 0.135 grams per one hundred milliliters. *2T. at 267.* The State also presented expert testimony from Robert Topmiller, who explained the significance of the test results and opined that Siler was impaired at the time he operated the vehicle. *2T. at 338-345.* Topmiller opined that Siler's blood alcohol concentration at the time of dispatch was approximately 0.26 grams per one hundred milliliters of blood. *2T. at 341.*

{¶29} Siler's sole asserted basis for suppression is that the phlebotomist could not recall whether she inverted the blood sample after collection, which he claims is required by Ohio Adm.Code 3701-53-06. *Appellant's brief at 7*. We are not persuaded by this argument. The regulation contains no requirement that a blood sample be inverted after collection. Ohio Adm.Code 3701-53-06 prescribes procedures for collection, sealing, labeling, and storage, but it does not mandate inversion of the sample as a condition of admissibility.

{¶30}   Even if such a step were contemplated by laboratory protocol, the failure to recall whether it occurred would, at most, constitute a minor procedural deviation. Minor deviations do not render test results inadmissible absent prejudice. *State v. Mayl,* 2005-Ohio-4629, ¶49; *State v. Burnside*, 2003-Ohio-5372, ¶ 34. Siler presented no evidence or expert testimony to establish that the failure to invert the blood sample would affect the test results in a significant manner.

**Ineffective Assistance Determination**

{¶31}   Because the State substantially complied with the governing statutes and administrative regulations and presented competent expert testimony, there is no reasonable probability that a motion to suppress the blood-alcohol evidence would have been granted. Siler therefore cannot establish either deficient performance or prejudice under *Strickland*.

{¶32}   Siler's sole assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.  Costs to Appellant, Gerald Siler.

By Popham, J.,

Baldwin, P.J., and

Montgomery, J., concur